**Milt and Suzanne FOX, et al., Plaintiffs,**

v.

**CALIFORNIA SIERRA FINANCIAL SERVICES, et al., Defendants,**

**No. C–86–2712 RHS (FW).**

United States District Court, N.D. California.

April 20, 1988.

David B. Adler, Merkel, Caine, Donohue & Duval, Seattle, Wash., for plaintiffs.

Maria J. Giardina, Morgan, Miller & Blair, Oakland, Cal., for defendants Rick M. Stein and Sigelman and Stein.

Richard D. Vasquez, Michael D. Abraham, Bartko, Welsh, Tarrant & Miller, San Francisco, Cal., for defendants Charles A. Baumer and Pachter, Gold and Schaffer.

## DISCOVERY ORDER

FREDERICK J. WOELFLEN, Chief United States Magistrate.

Pursuant to the plaintiffs' motion to compel defendants Rick Stein ("Stein") and Charles Baumer ("Baumer") to respond to deposition questions, answer interrogatories, produce documents and for sanctions, the court orders as follows.

## BACKGROUND

Foodsource, Inc. ("Foodsource") is a corporation which sold interests in certain food transportation containers ("containers") to the public. The sale of interests in the containers ("the offering") was marketed as an investment opportunity by California Sierra Financial Services.

Stein is an attorney and one of the named principals in the law firm Sigelman & Stein ("S & S"). Stein represented Foodsource and its president, David Dixon ("Dixon"), with regard to compliance with state and federal securities laws. Stein prepared two securities opinion letters in connection with the Foodsource offering, ("February 29, 1980 securities opinion let-

ter and March 31, 1981 securities opinion letter"). Baumer is a tax attorney and a principal in the law firm of Pachter, Gold & Schaffer ("PG & S"). Baumer prepared two tax opinion letters for Foodsource and Dixon in connection with the offering ("April 1, 1981 tax opinion letter and August 17, 1981 tax opinion letter").

The sale to the public of interests in the food transportation containers was not registered with state or federal agencies as a security. Subsequent to the initial offering, however, the California Department of Corporations inquired of Stein as to the status of the offering. Thereafter, in 1982, the SEC instituted an investigation into the status of the offering and issued a subpoena to Stein to submit documents for examination by the SEC and to appear to testify at a hearing.

Stein did appear at the hearing with an attorney, Mr. Kotoske, who at that time, represented both Stein and Dixon. Stein submitted the documents requested by the subpoena and testified voluntarily in response to questioning. Stein and Kotoske represented at the hearing that Stein's testimony was voluntary and, with the exception of a very few instances, was without objection based on attorney-client privilege or attorney work-product. Plaintiffs obtained a transcript of Stein's testimony to the SEC under the Freedom of Information Act, 5 U.S.C. § 552 and filed the transcript as an exhibit to their motion to compel. *See*, Transcript of Securities and Exchange Commission Testimony of Rick Stein—9/11/82 at pp. 7–10, 54 ("Transcript of SEC Testimony").

In 1986, in a case pending in the Central District of California entitled *Lippincott v. Foodsource, Inc.*, Baumer testified during deposition, without objection based on the attorney-client privilege, to communications relating to Baumer's tax opinion letters. The deposition transcript was filed and is part of the public record in the case of *Peter Lippincott v. Pachter, Gold & Schaffer and Charles Baumer*, Case No. C–531696, Superior Court Los Angeles County, California. The transcript of Baumer's deposition testimony was obtained by

plaintiffs and filed as an exhibit to their motion to compel.

The present case was filed in 1986 by purchasers of interests in the Foodsource containers, and naming, among others, Stein and Baumer and their law firms as defendants. The complaint claims, inter alia, that defendants defrauded plaintiffs by promoting and marketing an illegal investment scheme in violation of state and federal securities laws. Foodsource, Inc. is in bankruptcy and is not a named defendant in this case.

In 1987 plaintiffs deposed Stein and Baumer. During the depositions I was telephoned by the parties to resolve disputed issues of attorney-client privilege and work product. Subsequent to completion of the Stein and Baumer depositions, plaintiffs filed their motion to compel responses to questions posed at depositions which Stein and Baumer refused to answer based on attorney-client privilege and attorney-work product and for further responses to interrogatories and production of documents. The motion was filed before the assigned Judge, United States District Court Judge Robert H. Schnacke. Judge Schnacke declined to reconsider any question which had been ruled on by me by telephone conference at the time of Stein's and Baumer's depositions. Judge Schnacke then referred the matter to me. In accordance with my Order setting out the briefing schedule for plaintiffs' motion, I did not consider plaintiffs' reply brief in ruling on the issues herein. To the extent that any rulings previously made by me pursuant to telephone conference are inconsistent with the rulings contained in this Order, I hereby amend my previous rulings *sua sponte*.

## ISSUES

Plaintiffs submitted with their motion a "Designation of Portions of Testimony re: Motion to Compel" setting out deposition questions (numbered 1–43) which Stein and Baumer objected to primarily on the grounds of attorney-client privilege and attorney work-product. Plaintiffs argue that the attorney-client privilege and work-prod-

uct doctrine were improperly asserted on the ground that:

A. Defendants have failed to meet their burden of proving the applicability of the attorney-client privilege or work-product doctrine;

B. Stein's delivery of documents to the SEC and testimony at the SEC hearing constitute a waiver of the attorney-client privilege as to those matters testified to;

C. Baumer's 1986 deposition testimony in the *Lippincott v. Foodsource, Inc.* case constitutes a waiver of the attorney-client privilege and work-product doctrine as to all matters on the same subject testified to;

D. Defendants' assertion of the attorney-client privilege is barred by the fraud exception;

E. Stein's communications with the California Department of Corporations is not subject to the attorney-client privilege or the work-product doctrine; and

F. Relevant information contained in Stein's 1981, 1982 and 1983 income tax returns is discoverable. Plaintiffs also seek a ruling from the court:

1. overruling Stein's objections to interrogatories 41–52;

2. overruling Stein's objections to plaintiff's second request for production of documents;

3. overruling Baumer's objections to request for production of documents no. 13;

4. overruling Baumer's objections to interrogatories 45–50.

## PRIVILEGE LOGS

At the February 5, 1988 hearing on plaintiff's motion, I ordered that the matter be submitted and that defendants file a privilege log containing "a list of documents and communications, relating to all issues raised in this motion which defendants claim to be covered by either the attorney-client privilege or the work-product doctrine. The list shall specify the subject of the document or communication, whether the attorney-client privilege or the work-

product doctrine applies, and the basis for such claim. Order dated February 5, 1988." I ordered that the privilege log be filed and served no later than March 11, 1988. After having had approximately one month to prepare the privilege log, defendants requested an extension of time in which to file and serve the privilege log. I granted defendants five additional days.

*Privilege Log of Stein and Sigelman & Stein.* I find that the privilege log submitted by Stein and S & S fails to comply with my February 5, 1988 Order. The privilege log designates documents pertaining to deposition questions 3, 7, 10 and 13, interrogatories 41–48 collectively and 50–52 collectively, and document requests 1, 2, 3 and 4. Nowhere is it indicated which privilege is claimed as to these documents or the basis for any claim of privilege. As to all other deposition questions the privilege designates "no relevant documents" and no records of communications which Stein had with Foodsource.

 *Privilege Log of Baumer and PG & S.* I also find that the privilege log submitted by Baumer and PG & S fails to comply with my February 5, 1988 Order. The privilege log lists only the signator and recipient of documents claimed privileged and does not identify the document itself. The privilege log fails to identify documents claimed privileged and which would be responsive to interrogatories 45–50 on the ground that a list of such documents itself is privileged and that defendants' counsel did not understand my order to be requesting a list of such documents. In the face of the plain language of my Order and on the ground that information identifying a communication for which a claim of privilege is made is not itself privileged, I find this position is without merit.[1]

 I further find that defendants' failure to comply with my February 5, 1988 Order warrants sanctions under Rule 26(g).

---

**1.** Local Rule 230–5 provides "Whenever a claim of privilege is made with respect to a communication or other item, it shall be specifically identified and the grounds for the claim stated. No generalized claims of privilege shall be made." The fact of a communication claimed

In considering the issues raised herein, I give defendants' privilege logs the weight of consideration commensurate with the above-stated findings.

## WORK–PRODUCT DOCTRINE

"The work-product doctrine is aimed at protecting the effectiveness of a lawyer's trial preparations by immunizing such materials from discovery." *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926, 930 (N.D.Cal.1976).

 To establish applicability of the work-product doctrine, the proponent must show that the materials were prepared in anticipation of litigation or in preparation for trial. Fed.R.Civ.P. 26(b)(3). There is no requirement that the litigation have already commenced in order for the work-product doctrine to be operative, however, there must be more than a remote possibility of litigation. *Garfinkle v. Arcata National Corp.,* 64 F.R.D. 688, 690 (S.D.N.Y. 1974), *Panter v. Marshall Field & Co.,* 80 F.R.D. 718, 725 n. 6 (N.D.Ill.1978). Materials prepared in the ordinary course of business may not be protected from discovery by the work-product doctrine. *See,* Advisory Committee Comments to Fed.R.Civ.P. 26(b)(3), 1966 Amendment.

 The cases cited by Stein and S & S do not support their assertion that the work-product doctrine applies to the issues raised by this motion. In *Upjohn v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), the documents claimed to be attorney work-product were memoranda based on oral statements of corporate employees taken in the course of an internal corporate investigation performed by in-house general counsel. The Court declined to decide the work-product issue and remanded for further proceedings. *Id.* at 402–03, 101 S.Ct. at 689. In *Burlington Industries v. Exxon Corp.,* 65 F.R.D. 26 (D.Md.1974), a patent infringement case,

---

privileged (identifying the form of the communication, the title of the communication if a document and the subject of the communication) is not itself privileged. *See, Matter of Walsh,* 623 F.2d 489, 494 (7th Cir.1980) and cases cited therein.

the court set out criteria for determining the applicability of the attorney-client privilege and work-product doctrines in patent cases. The court recognized that, in order for documents to qualify as attorney work-product, there must be an identifiable prospect of litigation (i.e., specific claims that have already arisen) at the time the documents were prepared. *Id.* at 42–43. In *In re Special September 1987 Grand Jury (II),* 640 F.2d 49 (7th Cir.1980), the court found "by reason of the sequence of events it is clear that the law firm knew before it began to prepare the reports that the Grand Jury as well as the Illinois State Board of Elections wanted information [to be contained in the reports]." *Id.* at 61–62. I find no such similar circumstances here.

As to the documents and communications covering the period from 1980, 1981 and 1982 and claimed by defendants to be attorney work-product, defendants have failed to establish that such documents and communications were prepared in anticipation of an identifiable prospect of litigation. *See, Garfinkle v. Arcata National Corp.,* 64 F.R.D. at 690.

In particular, with regard to Stein's communications with the California Department of Corporations and other states' Department of Corporations ("state agencies"), I find that Stein's admission at the SEC hearing that correspondence with state commissions "would certainly not be ... work-product and would be public documents" is a startling contradiction to his present claim that such communications are work-product. *See,* Transcript of SEC Testimony at p. 8.

I find any objection by Stein based on attorney work-product to the deposition questions, interrogatories or document production requests covering the period of 1980, 1981 and 1982 is improper because it cannot be established that litigation concerning the Foodsource container sales program was anticipated at that time.

As to the documents and communications claimed by Baumer to be attorney work-product and which would be responsive to interrogatories 40–50, I find Baumer's claim is unsupported in the face of Bau-

mer's failure to comply with my February 5, 1988 Order. (*See also,* section entitled *Baumer's Objections to Interrogatories 45–50* at p. 19 herein).

## ATTORNEY–CLIENT PRIVILEGE

■ Defendants, as proponents, have the burden of establishing the applicability of the attorney-client privilege. *Weil v. Investment/Indicators, Research and Management,* 647 F.2d 18, 25 (9th Cir. 1981). Thus, defendants must show that:

(1) the asserted holder of the privilege is or sought to become a client;

(2) the person to whom the communication was made is a member of the bar of a court ... and

 (a) in connection with this communication is acting as

 (b) a lawyer;

(3) the communication relates to a fact of which the attorney was informed

 (a) by his client

 (b) without the presence of strangers

 (c) for the purpose of securing primarily either

 (i) an opinion on law or

 (ii) legal services or

 (iii) assistance in some legal proceeding, and not

 (d) for the purpose of committing a crime or tort: and

(4) the privilege has been

 (a) claimed and

 (b) not waived by the client.

*Handgards Inc. v. Johnson & Johnson,* 413 F.Supp. at 929, citing *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950).

Whether defendants have successfully met this burden shall be considered in the context of the remaining issues.

### *Stein's Testimony Before The SEC*

■ Stein argues that this court should follow *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596, 611 (8th Cir.1978) in which the court ruled that testimony before the SEC constitutes only a limited waiver of the attorney-client privilege. Stein also

relies on Byrnes v. IDS Realty Trust, 85 F.R.D. 679, (S.D.N.Y.1980) which holds that disclosure to the SEC did not waive the attorney-client privilege as to subsequent litigation because "voluntary disclosures to agencies should be encouraged . . ." Id. at 688.

Plaintiff's argue that the circumstances of this case warrant a finding that Stein's testimony before the SEC constituted a complete waiver of the attorney-client privilege, relying on Weil v. Investment/Indicators Research & Management, 647 F.2d 18 and Teacher's Insurance and Annuity Association of America v. Shamrock Broadcasting Co., 521 F.Supp. 638 (S.D.N.Y.1981).

In Weil the claim of waiver was based on delivery to the SEC of a letter written by in-house counsel for 'The Fund' (a non-party mutual fund managed by defendants) to Blue Sky counsel, which letter plaintiffs sought to obtain through discovery. There was apparently no formal SEC hearing and the Court states that the evidence is conflicting as to whether the letter was voluntarily disclosed. Id. at 23 n. 9. The Court found that there had been a waiver of the attorney-client privilege, however, based on a prior disclosure of Blue Sky counsel's advice during discovery proceedings. Id. at 25 n. 14.

Regarding the issue of waiver the Court stated:

Indeed, when, as here, the privilege communication is voluntarily disclosed without objection by the asserting party's counsel and in the absence of surprise or deception by opposing counsel, it may be unnecessary to look beyond the objective fact of disclosure in ruling on the question of waiver. (citation). Weil, 647 F.2d at 25 n. 13.

In the present case, Stein voluntarily produced documents and testified in response to an SEC subpoena. Stein apparently testified with the consent of his client, as Mr. Kotoske, who represented both Stein and Dixon before the SEC, was present at Stein's hearing. Stein testified voluntarily without raising the attorney-client privilege as to subject areas which he now claims are privileged. I find Stein's argument that his testimony before the SEC was not a waiver of the attorney-client privilege is discredited by the fact that Stein and his attorney did claim the attorney-client privilege and attorney work-product as to certain documents and/or communications on which he was questioned at the hearing, but did not claim the privilege for the subjects now in issue.

In addition, Stein's SEC testimony is subject to public disclosure and was obtained by plaintiffs through the Freedom of Information Act, 5 U.S.C. § 552.

Considering Ninth Circuit decisional law on the attorney-client privilege, as expressed in Weil, I am persuaded that the Court's reasoning in the Teacher's Insurance case is applicable here and I decline to follow Diversified Industries, Inc. v. Meredith.

I find that the Teacher's Insurance case adequately considered the existing case law on the issue of whether voluntary disclosure to the SEC constitutes a waiver of the attorney-client privilege, the very issue decided by the court (see 521 F.Supp. at 639). The well-reasoned opinion addresses the policy considerations expressed in Diversified and Byrnes without compromising the significance of the element of confidentiality essential to the attorney-client privilege.

The Teacher's Insurance court noted that in Byrnes, the issue concerned whether prior disclosure to the SEC of materials "relating to" the documents sought amounted to a waiver. Thus Byrnes is distinguishable from the situation where, as here, the information sought is the same information which was disclosed to the SEC. Teacher's Insurance and Annuity Association v. Shamrock Broadcasting Co., 521 F.Supp. at 642. In addition, the court stated:

Diversified . . . does not advance any compelling reason for overriding this basic attribute of the attorney-client privilege [that is, "that the client must take pains to ensure that the confidentiality of the communications has been preserved

before he may invoke the privilege."] *Id.* at 645.

Finally, the Court reasoned that:

> The courts in [*Diversified* and *Byrnes*] ... appear to have assumed that only two treatments of the waiver issue exist: (1) absolute waiver at the time of disclosure ... or (2) no waiver whatsoever for purposes of subsequent litigation.... However, a third alternative exists ... waiver only if the documents were produced without reservation; no waiver if the documents were produced to the SEC under a protective order, stipulation or other express reservation of the producing party's claim of privilege as to the material disclosed. It does not appear that such a reservation would be difficult to assert or substantially curtail the investigatory ability of the SEC. *Id.* at 646.

In weighing the policy consideration of cooperation with the SEC against the public interest in discovering the truth, I find that where, as here, information has been voluntarily and selectively disclosed to the SEC without steps to protect the privileged nature of such information, fairness requires a finding that the attorney-client privilege has been waived as to the disclosed information and all information on the same subject. *See, Weil v. Investment/Indicators,* 647 F.2d at 24, *Teachers Insurance and Annuity Association v. Shamrock Broadcasting Co.,* 521 F.Supp. 638, *Handgards v. Johnson & Johnson,* 413 F.Supp. at 929 ("An important consideration in assessing the issue of waiver is fairness.").

#### Baumer's Deposition Testimony

Plaintiffs attach a copy of Baumer's testimony in *Lippincott v. Foodsource, Inc.* ("Baumer's deposition testimony") as an exhibit to their moving papers and as evidence of the extent to which Baumer testified without objection concerning matters which he now claims are subject to the attorney-client privilege. Plaintiffs state that Baumer's deposition testimony was filed as part of the public record in the Los Angeles Superior Court case of *Peter Lippincott v. Pachter, Gold & Schaffer.*

Baumer argues that his deposition testimony was sealed as part of the record in the *Lippincott v. Foodsource, Inc.,* case pursuant to a court-approved settlement. In support of this contention, Baumer submits a declaration by the attorney who represented him in that case. However, Baumer has been unable to obtain any record of the sealing order. Despite Baumer's difficulties in attempting to obtain a copy of the sealing order, I am not inclined to find that the deposition transcript was, in fact, sealed without a copy of such order.

 Although, as Baumer asserts, the attorney-client privilege is held by the client and may only be waived by the client, such a waiver may be implied from the circumstances surrounding disclosure. *Duplan Corporation v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1162 (D.S.C.1975). A client may not knowingly allow his attorney to testify without objection and later claim that the matters testified to were subject to the attorney-client privilege and that he did not waive the privilege. Such a position is inconsistent with maintaining the confidentiality necessary to sustain the attorney-client privilege, and I note authority holding that any disclosure inconsistent with maintaining confidentiality waives the attorney-client privilege. *In re Subpoenas Duces Tecum,* 738 F.2d 1367, 1369 (D.C. Cir.1984), *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982). In addition, selective disclosure of confidential communications for the sake of obtaining a tactical advantage in litigation constitutes a waiver of the attorney-client privilege. *In re Sealed Case,* 676 F.2d 793, 808–09 (D.C.Cir. 1982), *Handgards v. Johnson & Johnson,* 413 F.Supp. at 929.

 I need not find, however, that a waiver has occurred in this instance. There in no indication here that Baumer's deposition testimony was without his client's knowledge or consent. I find Baumer's assertion that the deposition transcript was sealed insufficient absent a copy of the sealing order and in light of the fact

that it is of public record in this case and in the *Lippincott v. Pachter, Gold & Schaffer* case. I therefore find that Baumer has failed to carry his burden of establishing that the matters disclosed in his deposition testimony are protected by the attorney-client privilege and hold that no privilege attaches thereto. Thus, Baumer shall be compelled to respond to questions concerning the subjects disclosed in the deposition testimony.

### Stein's Communications with the California Department of Corporations

During 1981 Stein communicated with the California Department of Corporations in response to an inquiry into the status of the Foodsource container sales program. The record indicates that Stein also communicated with other states' departments of corporation on the same subject.

 "[T]he attorney-client privilege is to be applied only when necessary to achieve its purpose of encouraging clients to make full disclosure to their attorneys." *United States v. Osborn,* 561 F.2d 1334, 1339 (9th Cir.1977). Stein's communications with the California Department of Corporations, and with other states' departments of corporations ("state agencies") are communications involving third parties and not involving the clients. Such communications are not privileged. *See, In re Sealed Case,* 676 F.2d at 809. To the extent that such communications may have contained information obtained in confidence from the client, there is no indication that the client did not consent to the communications. Information communicated to the attorney by a client in confidence which the client expects the attorney to relate to third parties is not protected by the attorney-client privilege. *United States v. Tellier,* 255 F.2d 441, 447 (2d Cir.1958).

Furthermore, from the circumstances surrounding Stein's communications with state agencies, it appears that such communications relate to the business affairs of the client Foodsource, Inc., namely, the status of the Foodsource container sales program as a security in each state. To the extent that this is true, and it has not been shown to be otherwise, the attorney-client privilege may not be invoked to cloak a client's business affairs in secrecy. *Matter of Fischel,* 557 F.2d 209, 211 (9th Cir.1977).

Therefore, I find that Stein has failed to establish that the attorney-client privilege applies to Stein's communications with the California Department of Corporations or other state agencies, and hold that Stein may be compelled to produce the relevant documents and answer questions relating to such communications.

### Stein's 1980, 1981 and 1982 Income Tax Returns

At the February 5, 1988 hearing on plaintiff's motion I ruled from the bench that Stein may not be compelled to produce copies of his 1980, 1981 and 1982 income tax returns. I did not make a finding, nor did I rule at that time that information contained in the tax returns which is relevant to the issues in this lawsuit would not also be produced.

In Stein's opposition to plaintiff's motion to compel, Stein states:

In response to this motion ... Stein has obtained and reviewed his 1981, 1982 and 1983 returns and has agreed to answer questions under oath concerning the tax treatment of the half-container interest and information concerning his tax treatment of a 4.9% ownership interest in Foodsource. Stein had suggested that plaintiffs simply pose interrogatories on this subject matter and he will answer fully regardless of the manner or schedule upon which he reported this information.

I find this information to be relevant and non-privileged and should be produced by Stein in the manner set out above.

### Stein's Objections to Interrogatories 41–48

Stein argues that interrogatories 41–48 refer to Stein's March 31, 1981 securities

opinion letter, and that any questions seeking Stein's basis for legal opinions are protected by the work-product doctrine. Stein argues that "the requirement that work-product material be prepared in 'anticipation of litigation' [is a] narrow and technical interpretation." I find this position ignores the plain language Rule 26(b)(3) and the fundamental reason underlying the work-product doctrine. *See, Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947).

I find no evidence that Stein's securities opinion letter was, in fact, prepared in anticipation of litigation. *See,* section entitled *Work–Product Doctrine,* at p. 524 herein. I find, instead, that the securities opinion letter was prepared in the normal course of making the necessary preparations to offer the Foodsource containers for sale to the public. This type of activity is undertaken in the ordinary course of business and should not be elevated to the status of attorney work-product merely because of the unidentifiable possibility that future litigation concerning the Foodsource container sales program might occur. *See, Panter v. Marshall Field & Co.,* 80 F.R.D. 718, 725 n. 6 (N.D.Ill.1978), citing *In re Penn Central Commercial Paper Litigation,* 61 F.R.D. 453, 467–68 (S.D.N.Y.1973); *Garfinkle v. Arcata National Corporation,* 64 F.R.D. at 690.

Therefore, I reject the broad application of the work-product doctrine suggested by Stein and hold that Stein's March 31, 1981 securities opinion letter does not constitute attorney work-product. This same reasoning applies also to Stein's February 29, 1980 securities opinion letter.

*Stein's Objections to Interrogatories 49–52*

*Baumer's Objections to Interrogatories 45–50*

■■ Stein argues that interrogatories 49–51 seek all facts Stein and S & S intend to introduce at trial in support of their affirmative defenses. Stein has objected on the ground that these call for disclosure of the strategical thought processes of defense counsel in preparation for trial and thus are protected from disclosure as attorney work-product, citing *Powell v. United States Dept. of Justice,* 584 F.Supp. 1508 (N.D.Cal.1984). Stein further argues that interrogatory 52 seeks discovery of information protected by the attorney-client privilege. Baumer argues that interrogatories 45–50 seek facts which Baumer and PG & S will rely upon at trial in support of their affirmative defenses. Baumer categorically asserts the attorney-client privilege and work-product doctrine to each of these interrogatories.

The issue in *Powell* was whether defendant's claims of exemption under a FOIA request for disclosure of documents were valid. With respect to a claim of attorney work-product the Court states:

[I]n the context of work product, the court must be particularly sensitive to the possibility that an attorney's discussion of factual matters will reveal his or her tactical or strategic thoughts. (citation). Accordingly, assuming that the work-product privilege generally applies to the document, only verbatim witness statements and other objective reporting of facts need be released. *Id.* at 1520.

Thus, the concern in *Powell* was that the attorney's thought processes would be disclosed in documents which had already been prepared and which contained certain factual information that was not otherwise privileged.

In the present case, however, the interrogatories seek only the facts on which defendants intend to rely and not documents containing defendants' attorney's thought processes. Indeed, Stein has represented that no such documents exist. *See,* Stein's privilege log. With regard to interrogatories 49–52 to Stein and 45–50 to Baumer, I find that the language "on which defendants intend to rely at trial" is improper at this stage of the litigation, as no discovery cut-off date has been set. As explained below, defendants shall respond to the interrogatories by stating all facts which support the affirmative defenses, without the limiting language quoted.

I find that Stein and S & S, and Baumer and PG & S, cannot prevail on their blanket claim that the interrogatories seek information protected by the attorney-client privilege. Baumer argues that the trustee in bankruptcy has instructed that the attorney-client privilege be asserted. Baumer goes on to state that "While Baumer and PG & S have filed an answer which if carried to trial would require as support testimony regarding confidential communications between Foodsource and Baumer and PG & S, the time is not now ripe for Baumer's and PG & S's abandonment of the privilege." Baumer and PG & S also claim that they have not yet decided whether they will rely on the "self-defense" exception to the attorney-client privilege.

By asserting affirmative defenses, defendants have placed the information supporting those affirmative defenses at issue in this lawsuit. The general rule is that placing privileged communications at issue in a lawsuit waives the privilege for such communications. In *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1099 (7th Cir.1987) the court stated:

> To waive the attorney-client privilege by voluntarily injecting an issue in the case, a defendant must do more than merely deny a plaintiff's allegations. The holder must inject a new factual or legal issue into the case. Most often, this occurs through the use of an *affirmative defense.* (emphasis added).

Although the 'holder' of the privilege here, the trustee in bankruptcy of Foodsource, is not a party in this action, I find the *Lorentz* court's reasoning is particularly relevant in the present case where defendants have raised numerous affirmative defenses in response to plaintiffs' complaint, seek to avoid revealing the basis for these defenses by claiming the attorney-client privilege, and claim an unrestricted right to introduce the privileged information in support of the affirmative defenses at trial. Defendants cannot conceal such information from discovery and expect to spring it upon plaintiffs in the midst of trial for the sake of obtaining a tactical advantage in litigation. Such selective disclosure constitutes a waiver of the attorney-client privilege. *In re Sealed Case*, 676 F.2d at 808–09. I find defendants' argument that Foodsource's trustee in bankruptcy has instructed defendants to assert the privilege does not aid their position if, in fact, defendants have the consent of the trustee to waive the privilege at trial. If the holder intends to consent to waiver of the attorney-client privilege at trial, such intention must be disclosed during the discovery stage and any information as to which the privilege will be waived must be made available to the opposing party through discovery so as not to afford the one party an unfair advantage at trial. *See, Handgards v. Johnson & Johnson*, 413 F.Supp. at 929.[2]

No authority cited by defendants with regard to the "self defense" exception to the attorney-client privilege compels an opposite conclusion. If, in fact, Foodsource's trustee in bankruptcy does not intend to waive the attorney-client privilege, then the issue of whether defendants may disclose certain confidential communications in their own self-defense at trial is properly raised by a motion *in limine.*

### Second Request for Production of Documents to Stein

See discussion regarding Stein's 1980, 1981 and 1982 tax returns, above.

### Request for Production of Documents # 13 to Baumer

The request seeks copies of all communications to or from the law firm of Townsend & Townsend regarding the Foodsource container at issue in this lawsuit.

---

**2.** This reasoning has also been stated as follows: Where "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense" then the privilege is deemed waived. *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975).

Defendants state that neither Baumer nor PG & S have ever communicated with Townsend & Townsend and that plaintiffs have a copy of the only letter to which Townsend & Townsend was a party that defendants know of. Therefore the issue of objections is moot.

*Additional Issues Raised by the Parties*

■ *Whether Disclosure of the February 29, 1980 securities opinion letter constituted a waiver of the attorney-client privilege.* Disclosure of the February 29, 1980 opinion letter was made on the following occasions: (1) sent to Neal Combs, General Counsel for Fruehauf Corp. on September 18, 1980, with copies to Marshall Boyer, a principal at Foodsource, and David Dixon, (2) sent to Nicholas Unkovic of Graham & James who was counsel for a Mr. Middleton who Foodsource was considering as its president, (3) sent to the California Department of Corporation in response to its investigation, (4) sent to the SEC in response to its investigation. Stein and S & S argue that the first two disclosures were not a waiver of the attorney-client privilege under the common interest doctrine.

The cases relied upon by Stein do not support a finding that there was a community of interest between Foodsource and Fruehauf or between Foodsource and Mr. Middleton. The passage quoted by Stein from *SCM Corp. v. Xerox,* 70 F.R.D. 508 (1976) relates to a finding by the court that, as to a committee made up of representatives from two corporations for the purpose of considering a certain patent structure, there was a sufficient community of interest due to the "setting of joint analysis ..., cooperative study ..., and common interests in patent protection ..." *Id.* at 514 That is not the case here. In fact, the letter to Mr. Combs, attached as part of Ex. D to Stein's opposition papers, makes clear that Fruehauf is considered a 'mere manufacturer' who has accepted a purchase order and is not considered a participant in the Foodsource container sales program.

The community of interest doctrine was thoroughly considered in *Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. at 1172–75 and summarized in *Weil Ceramics & Glass, Inc. v. Work,* 110 F.R.D. 500 (E.D.N.Y.1986) as follows: "[The community of interest] rule is limited to those situations involving either the legal duty to defend another entity or the common interest arising from a client transaction between two separate entities which are represented by the same attorney." *Id.* at 503. In the present case there is no indication that Stein was acting as the attorney for Fruehauf regarding the proposed purchase of containers by Foodsource. With regard to Mr. Middleton, he was represented by his own counsel, Mr. Unkovik, in the matter of accepting the Foodsource presidency.

Therefore I do not find that a community of interest existed between Foodsource and Freuhauf, or Foodsource and Mr. Middleton. Accordingly, I find that delivery to them of the February 29, 1980 securities opinion letter did constitute a waiver of the attorney-client privilege.

Regarding delivery of the February 29, 1980 securities opinion letter to the California Department of Corporations and the SEC, the analysis set out in the sections dealing with communications between Foodsource and these entities, above, applies equally to the February 29, 1980 opinion letter.

*Deposition Questions*

Pursuant to the legal analysis of the issues set out above, I rule as follows on objections to the individual deposition questions.

*Question 1.* Stein asserts that no such documents exist. *See,* Stein's privilege log. The objection to the question of whether such documents exist is improper, as the fact of a privileged communication is not, itself, privileged.

*Question 3.* The communications inquired into by this question are not privileged as explained herein.

*Question 4.* To the extent that these communications were discussed by Stein at the SEC hearing, any attorney-client privi-

lege that may have attached to them has been waived.

*Question 5.* The question does not seek information protected by the work-product doctrine. See response to question 4.

*Question 7.* Not relevant to the issues in this action.

*Questions 8 and 9.* See response to question 4.

*Question 10.* The information requested is relevant and non-privileged.

*Question 12.* See response to question 4.

*Question 13.* See response to questions 8–9.

*Questions 15 and 16.* See response to question 4.

*Question 18.* It appears that this area of discussion relates primarily to business matters rather than confidential communication for the purpose of seeking legal advice. Therefore, the objection on the grounds of the attorney-client privilege is improper. See also response to question 4.

*Question 19.* The question asks for a 'yes' or 'no' answer that is relevant to the extent of Baumer's authority and control at PG & S.

*Question 20.* See response to question 4.

*Questions 21, 23 and 24.* See response to question 18.

*Question 25.* The objection stands.

*Question 26.* See response to questions 8 and 9.

*Question 27.* See response to question 4.

*Question 31.* See response to question 18.

*Question 32.* See response to question 18. The objection based on work-product is improper.

*Question 33.* See response to questions 8 and 9.

*Question 34.* The objection based on attorney-client privilege is improper.

*Questions 35 and 36.* See response to question 18.

*Question 37.* See response to question 32.

*Question 39.* See response to questions 8 and 9.

*Question 40.* See response to question 18.

*Question 43.* The objection stands.

### Fraud

In light of my findings herein, I do not reach the issue of whether plaintiffs have made out a prima facie case of fraud sufficient to constitute an exception to all claims of attorney client privilege.

### Sanctions

To the extent that this Order grants plaintiffs' motion to compel, I do not find that defendants' opposition to plaintiffs' motion was without substantial justification so as to award plaintiffs' attorney's fees and costs under Rule 37.

I find sanctions are warranted under Rule 26(g) for defendants' failure to comply with my February 5, 1988 Order regarding privilege logs. Accordingly, I award plaintiffs the sum of $1000.00, with $500.00 assessed against Stein and S & S, and $500.00 assessed against Baumer and PG & S.

### Conclusion

Defendants shall respond to the discovery requests which are the subject of this motion according to the rulings made herein. Defendants' responses to the deposition questions shall be in writing in the form of answers to interrogatories. All responses shall be served on plaintiffs no later than 30 days following the date of this Order.

IT IS SO ORDERED.