McMORGAN & COMPANY, as Investment Manager and a Fiduciary of the Pension Trust Fund for Operating Engineers, et al., Plaintiffs,

v.

FIRST CALIFORNIA MORTGAGE CO., a California corporation, et al., Defendants.

And Related Counterclaims.

No. C–94–1115 WHO.

United States District Court, N.D. California.

June 17, 1996.

Victor J. VanBourg, Christian L. Raisner, VanBourg, Weinberg, Roger & Rosenfeld, Oakland, CA, for Plaintiff McMorgan & Company as investment manager for Pension Funds.

Judith Z. Gold, Heller, Ehrman, White & McAuliffe, San Francisco, CA, for Plaintiff and Counterdefendant McMorgan & Company.

Roger McLeod, Gregory Lippetz, Brobeck, Phleger & Harrison, San Francisco, CA, for Defendants First California Mortgage Company and Dennis M. Hart.

Kevin W. Wheelwright, Hallgrimson, McNichols & McCann, Pleasanton, CA, for Counterdefendant Brad–Allen Properties/River Oas Oakland Limited Partnership.

Thomas Castle, Law Offices of Thomas Castle, Walnut Creek, CA, for Counterdefendant Branagh, Inc.

Hal Gazin, Reno, Nevada, in Pro Per.

Ralph R. Rhoades, James E. Sell, Lynch, Loofbourrow, Gilardi & Grummer, San Francisco, CA, for Counterdefendant Ghilloti Bros.

Charles J. McGuire, Strickland & Haapala, Oakland, CA, for Counterdefendant Branagh, Inc.

Samuel Goldstein, Walnut Creek, CA, for Counterdefendant Daniel Fox & Associates.

Steve Lanum, Charles Eisner, Boornazian, Jensen & Garth, Oakland, CA, for Counterdefendant Payne, Thompson, Walker & Taaffee.

Michael W. Valley, Mountain View, CA, for Counterdefendant Val–West Development, Inc.

Phillip A. Jaret, Robert S. Jaret, Jaret & Jaret, San Francisco, CA, for Counterdefendant Gosliner/McLean.

Louis Test, Hoffman, Test & Guinan, Reno, NV, for Counterdefendant ProMag, Inc.

Henry Batteate, Jr., San Lorenzo, CA, in Pro Per.

## OPINION AND ORDER

ORRICK, District Judge.

In this complex ERISA action, defendant and counterclaimant First California Mortgage Co. ("FCMC") moves to compel the production of certain documents and for sanctions against plaintiff and counterdefendant McMorgan & Company ("McMorgan"). McMorgan brings a countermotion for a protective order barring discovery of the disputed documents. For the reasons hereinafter set forth, the Court grants FCMC's motion to compel, denies FCMC's motion for sanctions, and denies McMorgan's countermotion for a protective order.

### I.

This is a complex ERISA action involving a large number of parties. For the purposes of these motions, only the briefest outline of the facts is required. McMorgan brought the underlying ERISA action against FCMC on behalf of several pension trust funds (the "Trust Funds") for which McMorgan was the investment manager. FCMC performed real estate mortgage services for the Trust Funds in connection with multiple construction loans made to real estate developers. McMorgan alleges that FCMC exercised discretionary control over the Trust Funds and, therefore, was an ERISA fiduciary. It brings claims against FCMC under ERISA for eight construction loans that went into default. McMorgan alleges that FCMC's servicing of the various loans was performed negligently and fraudulently.

FCMC brought numerous counterclaims against McMorgan, the borrowers of the construction loans, the real estate developers, the inspectors, and FCMC's attorneys. FCMC alleges that McMorgan oversaw and

approved all of the loans at issue and maintained ultimate authority for all loan activities.

At some point, the United States Department of Labor ("DOL") began investigating the loan transactions involved in this action. At the DOL's request, McMorgan transmitted to the DOL various documents relating to the loan transactions. McMorgan's counsel engaged in a correspondence with the DOL that is apparently reflected in various letters and reports, copies of which remain in McMorgan's possession. As of yet, the DOL has not initiated any legal proceedings against either McMorgan or FCMC.

In the current dispute before the Court, FCMC moves the Court for an order compelling McMorgan to produce all documents McMorgan transmitted to the DOL as well as all communications with the DOL relating to the loans at issue in this litigation and to McMorgan's construction loan program in general. In the alternative, FCMC seeks an order compelling McMorgan to produce immediately all such documents to which McMorgan asserts no privilege, and to produce a detailed privilege log for those documents McMorgan claims are privileged. FCMC also moves for sanctions against McMorgan for the attorneys' fees and costs involved in bringing this motion.

McMorgan brings a countermotion for a protective order to (1) deny discovery of documents and communications exchanged between McMorgan and the DOL; and (2) protect McMorgan from the burdens of producing a privilege log or a log of any kind respecting any documents and communications between McMorgan and the DOL.

## II.

During the deposition of Daniel O'Donnell, McMorgan's Federal Rule of Civil Procedure 30(b)(6) designee, O'Donnell testified that the DOL was reviewing eight of the McMorgan construction loans that are, or were, involved in this litigation. (McLeod Decl., Ex. A, O'Donnell Dep. 51:3–10.) Since then, McMorgan has steadfastly refused to produce to FCMC any of the documents that it provided to the DOL on the grounds that (1) all of the nonprivileged documents have already been produced, and (2) the remainder are attorney work product and/or protected by attorney/client privilege. McMorgan has also refused to provide a privilege log of the allegedly privileged communications between McMorgan and the DOL.

FCMC then attempted to obtain the documents McMorgan transmitted to the DOL by filing a Freedom of Information Act ("FOIA") request with the DOL. The DOL responded that it was withholding all non-public documents at this time pursuant to 5 U.S.C. 552(b)(7)(A), which authorizes the withholding of records or information compiled for law enforcement purposes to the extent that production of such information could reasonably be expected to interfere with enforcement proceedings. (Ramirez Decl., Ex. A.)

After a telephone conference on February 2, 1996, Special Master Edward S. Washburn ordered McMorgan to provide, for *in camera* review, the documents to which McMorgan asserts a privilege. Special Master Washburn ordered McMorgan to produce to FCMC all other documents that McMorgan sent to the DOL. (McLeod Decl., Ex. B, Tr. 44:14–19.)

On February 23, 1996, counsel for FCMC reviewed two boxes of the nonprivileged documents that Special Master Washburn ordered McMorgan to produce. McMorgan did not allow FCMC's counsel to make copies of any of these documents, even though FCMC's counsel located some documents that McMorgan had not previously produced.

After reviewing the allegedly privileged documents, and after further briefing on the question of whether the DOL investigation prevents further inquiry by FCMC into the communications between McMorgan and the DOL, Special Master Washburn referred the matter to this Court for decision.

## A.

There is no question but that the McMorgan/DOL documents are relevant to this litigation, and responsive to FCMC's various document requests and deposition questions. Both parties agree that certain documents

that McMorgan produced to the DOL are not privileged. In the two boxes of documents McMorgan produced on February 23, which it admits are not privileged, FCMC's counsel located documents that were not previously produced. (Palmer Decl. ¶ 4.) The Court finds that McMorgan must again produce to FCMC the McMorgan/DOL documents that even McMorgan agrees are not privileged. FCMC then may flag or copy all of the documents that it believes have not been previously produced in this litigation. These documents must be produced to the Document Depository immediately.

### B.

■ The key issue in these motions is whether producing otherwise privileged documents to a government investigatory agency at the agency's request constitutes a waiver of the privilege. In the Ninth Circuit, the party asserting a privilege bears the burden of proving that the privilege applies, and that the privilege has not been waived. *Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 25 (9th Cir.1981); Fed.R.Civ.P. 26(b)(5). Thus, McMorgan bears the burden of demonstrating that it did not waive the attorney-client privilege and work product doctrine by producing otherwise privileged material to the DOL.

### 1.

■ McMorgan argues that disclosure of privileged materials voluntarily surrendered to a government agency in a separate and nonpublic investigation constitutes only a limited waiver, so that such material is not discoverable in a subsequent private action.[1] McMorgan relies primarily on *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir.1977) (*en banc*).

In *Diversified*, the Eighth Circuit examined whether Diversified waived its attorney-client privilege by voluntarily producing privileged materials to the SEC pursuant to subpoena. The court held that because Diversified disclosed those documents in a separate and nonpublic SEC investigation, only a lim-

ited waiver of the privilege occurred. "To hold otherwise may have the effect of thwarting the developing procedure of corporations to employ independent outside counsel to investigate and advise them in order to protect stockholders, potential stockholders and customers." *Id.*

One district court has interpreted *Diversified* as holding that "voluntary submissions [of privileged material] to agencies in separate, private proceedings should be a waiver only as to that proceeding." *Byrnes v. IDS Realty Trust*, 85 F.R.D. 679, 689 (S.D.N.Y. 1980). The *Byrnes* court reasoned that "voluntary disclosures to agencies should be encouraged rather than requiring that agency requests or subpoenas be fought to the hilt." *Id.* at 688.

This rule, however, has not been adopted by the Ninth Circuit. The *Diversified* rule has been examined only once in the Ninth Circuit, in *Fox v. California Sierra Financial Services*, 120 F.R.D. 520 (N.D.Cal.1988). In that case, Chief Magistrate Woelflen expressly rejected *Diversified*, and held that:

> In weighing the policy considerations of cooperation with the SEC against the public interest in discovering the truth, I find that where, as here, information has been voluntarily and selectively disclosed to the SEC without steps to protect the privileged nature of such information, fairness requires that the attorney-client privilege has been waived as to the disclosed information and all information on the same subject.

*Id.* at 527 (citations omitted). Chief Magistrate Woelflen emphasized that, in *Fox*, documents and testimony had been provided to the SEC without any assertion of privilege.

> "*Diversified* ... does not advance any compelling reason for overriding this basic attribute of the attorney-client privilege [that is, 'that the client must take pains to ensure that the confidentiality of the communications has been preserved before he may invoke the privilege.']"

---

1. At oral argument, McMorgan suggested that the documents in dispute had been subpoenaed by the DOL and, thus, were not voluntarily pro-

duced. There is no evidence before the Court that the McMorgan/DOL documents were not produced voluntarily.

*Id.* at 526–27 (*quoting Teacher's Ins. & Annuity Ass'n v. Shamrock Broadcasting Co.,* 521 F.Supp. 638, 645 (S.D.N.Y.1981)).

The *Fox* opinion is not aberrational on this issue. In *Westinghouse Electric Corp. v. Republic of Philippines,* 951 F.2d 1414 (3d Cir.1991), the Third Circuit held that Westinghouse waived its privilege to any documents disclosed to the SEC and the Department of Justice in response to investigations of those agencies, emphasizing that *Diversified* "still stands alone" in recognizing an exception to traditional waiver doctrine for voluntary disclosures made to the SEC in connection with SEC investigations. *Id.* at 1424, n. 9. The court noted that the rationale behind the *Diversified* decision—to encourage voluntary cooperation with government investigations—had nothing to do with the attorney-client privilege's purpose of encouraging full disclosure to one's attorney in order to obtain informed legal assistance. *Id.* at 1424–25. The court held that *Diversified*'s limited waiver concept extended the attorney-client privilege beyond its intended purpose, and expressly refused to follow it. *Id.* "In our view, to go beyond the policies underlying the attorney-client privilege ... would be to create an entirely new privilege." *Id.* at 1425. Although *Fox* and *Westinghouse* are not binding authority, this Court finds their reasoning persuasive.[2] In the absence of Ninth Circuit authority adopting this new privilege, the Court declines to expand the attorney-client privilege and declines to follow *Diversified.*

McMorgan protests that it did take steps to protect the privileged nature of the material it provided the DOL by communicating with the DOL only through counsel. FCMC, however, correctly points out that the key issue is not what *McMorgan* did, but what McMorgan's *counsel* did to protect the privileged material it produced to the DOL.

McMorgan acknowledges that no attorney-client privilege attaches to communications between McMorgan or its counsel and the DOL. Thus, the only issue is whether otherwise privileged materials retained their privileged status when communicated to the DOL by McMorgan's counsel. There is nothing on the record to indicate that McMorgan's counsel notified the DOL that it refused to produce any of the disputed material as privileged. There is no hint of any protective order or stipulation between McMorgan and the DOL regarding nonwaiver of privilege. There is no hint of evidence that McMorgan did anything but simply hand over the documents to the DOL without a second thought.

McMorgan argues that it relied on case law such as *Diversified* when it produced privileged information to DOL, and expected that it had not waived any privilege in doing so. (Van Bourg Decl. ¶ 3.) As noted above, the case law on this issue is far from settled. Moreover, a party's bare assertion that it did not subjectively intend to waive a privilege is insufficient to show nonwaiver. *Weil,* 647 F.2d at 25.

The Court finds that McMorgan has not met its burden of showing that any of the attorney-client privilege material it provided to the DOL remained privileged once it was received by the DOL.[3] McMorgan waived the attorney-client privilege as to all material provided to the DOL, and must produce these documents to FCMC immediately.

2.

■ McMorgan asserts that virtually all of the documents in dispute are also protected from disclosure to FCMC by the work product doctrine. Fed.R.Civ.P. 26(b)(3). McMorgan asserts that the documents were prepared by, or at the behest of, McMorgan's attorneys, contain attorney mental impressions, opinions or legal theories, and were

**2.** *See also Permian Corp. v. United States,* 665 F.2d 1214, 1221 (D.C.Cir.1981) ("If the client feels the need to keep his communications with his attorney confidential, he is free to do so under the traditional rule by consistently asserting the privilege, even when the discovery request comes from a 'friendly' agency.").

**3.** McMorgan's assertion that, as an ERISA fiduciary, it had a duty to produce the documents to

DOL (citing 29 U.S.C. § 1104(a)(1)) does not change the analysis. McMorgan's ERISA duty did not prevent it from at least attempting to obtain a protective order. Having failed to do so, it cannot now complain that it did not intend to waive the privilege. The Court need not decide whether an agency's refusal to enter into a protective order requires reaching the same result.

prepared in anticipation of litigation. McMorgan states in its brief, without citation to a declaration, that at the time the DOL was requesting information, litigation was already on-going relating to several of the projects at issue. At oral argument, however, McMorgan's counsel expressly stated that the documents at issue were *not* prepared in anticipation of litigation.

Assuming, without deciding, that the documents in question were covered by the work product doctrine prior to their disclosure to the DOL, the Court must decide whether McMorgan waived the work product doctrine by providing those documents to the DOL without attempting to protect the documents' status as attorney work product.

██ The standard for waiver of work product protection is more lenient than the standard for waiver of attorney-client privilege because the two privileges serve different purposes. *United States v. AT & T,* 642 F.2d 1285, 1298–99 (D.C.Cir.1980). The majority rule is that disclosure to a third party does not automatically waive work product protection.

> Because the work-product doctrine serves ... to protect an attorney's work product from falling into the hands of an adversary, a disclosure to a third party does not necessarily waive the protection of the work-product doctrine. Most courts hold that to waive the protection of the work-product doctrine, the disclosure must enable an adversary to gain access to the information.

*Westinghouse,* 951 F.2d at 1428. *Accord AT & T,* 642 F.2d at 1298–99; 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure,* § 2024 at 369 (1994). "So long as transferor and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of their trial preparation efforts." *AT & T,* 642 F.2d at 1299. Once a party has disclosed work product to an adversary, it waives the work product doctrine as to all other adversaries. *Westinghouse,* 951 F.2d at 1429.

Thus, the issue is whether McMorgan and the DOL are adversaries, or whether they shared common interests. McMorgan argues that McMorgan and the DOL both share the common interest of protecting the participants and beneficiaries of pension funds. The Secretary of Labor is charged with enforcing ERISA, and has authority to sue in the interest of pension plan beneficiaries. 29 U.S.C. § 1132(a). As an ERISA fiduciary, McMorgan is similarly obligated to "discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). While this argument is correct as far as it goes, it ignores the possibility that the DOL was investigating *McMorgan.*

McMorgan suggests that it is not a target of the DOL investigation. McMorgan's counsel argued eloquently at oral argument that McMorgan is not a target of the DOL investigation. McMorgan does not submit any declarations or other evidence in support of this contention. These bare assertions do not even begin to meet its burden of demonstrating that the disputed materials are subject to work product protection. Moreover, FCMC has submitted evidence suggesting that the DOL may very well be investigating McMorgan. A letter from the DOL states that "A review of our files indicates that we have conducted investigations and gathered documents relating to each of the entities you have listed in your letter [including McMorgan]...." (Ramirez Decl., Ex. A.) Furthermore, a privilege log submitted by McMorgan to FCMC, dated April 11, 1996, and later inexplicably withdrawn, lists as privileged certain documents given to the DOL relating to draft tolling agreements; current real estate policies, practices and procedures at McMorgan; and the overall performance of McMorgan real estate investments. (Lippetz Decl., Ex. A at No. 524, 526, 529–30, 532–33, 537–41.) FCMC has also provided a declaration from Roderick McLeod attesting that he spoke with Tim Hauser, the DOL lawyer in charge of the DOL's pending investigation of McMorgan. (McLeod Decl. ¶ 2.) Hauser told McLeod that FCMC was not currently under investigation by the DOL, and that the DOL had entered into a statute of limitations tolling agreement with McMorgan to give the DOL additional time to complete its investi-

gation of McMorgan. (McLeod Decl. ¶¶ 3–4.) This evidence suggests, but does not prove, that McMorgan is, or may once have been, a target of the DOL investigation. Moreover, it should have been transparently obvious to McMorgan that once the DOL began investigating the loans at issue in this action, that the DOL and McMorgan were at least potential adversaries.

McMorgan has failed to meet its burden of demonstrating that any of the documents provided to the DOL are protected by the work product doctrine. All of these documents must be produced to FCMC immediately.

### C.

■ McMorgan seeks a protective order (1) to deny discovery of documents and communications exchanged between McMorgan and the DOL; and (2) to protect McMorgan from the burdens of preparing a privilege log of any kind respecting any documents and communications between McMorgan and the DOL.

■ McMorgan spends a great deal of its brief citing cases interpreting the Freedom of Information Act, in an attempt to show that the DOL was justified in refusing to produce the McMorgan materials to FCMC. This is completely irrelevant. FCMC is *not* seeking an order compelling the DOL to produce its investigatory files. The issue is not whether the DOL was legally justified in withholding certain documents from FCMC under FOIA, but whether *McMorgan* should be protected from producing to FCMC the materials it produced to the DOL.

Essentially, McMorgan's arguments boil down to repeated assertions that if it were forced to produce the disputed documents to FCMC, the DOL's investigation could be compromised. The cases McMorgan cites concern FOIA requests against a federal agency by an individual who is under investigation by that agency. *Kay v. FCC*, 867 F.Supp. 11 (D.D.C.1994); *Lewis v. IRS*, 823 F.2d 375 (9th Cir.1987). There is no evidence before the Court that the DOL is investigating FCMC. There is at least circumstantial evidence that the DOL may be

investigating McMorgan. Nothing before the Court demonstrates a legitimate fear that the disputed documents will reveal to FCMC the strategy and strength of a case that is about to be brought by the DOL against FCMC. Indeed, it seems unlikely in the extreme that such sensitive DOL strategic information would be in McMorgan's possession, given McMorgan's position at the very center of the disputes over the loans at issue. Moreover, McMorgan is not the government and has not demonstrated that it has any standing to assert a FOIA exemption. Whether the DOL could properly withhold its investigatory file is not before the Court.

McMorgan also seeks a protective order barring disclosure of the disputed documents to FCMC on the ground that the disputed documents will reveal McMorgan's trade secrets. While protective orders to safeguard trade secrets are often granted, McMorgan has made no showing that any of the documents it provided to the DOL were trade secrets. Nor has it shown that disclosure of those documents to FCMC pursuant to a protective order limiting the use of those documents to this litigation would not properly safeguard any trade secrets.

McMorgan's countermotion for a protective order excusing it from being required to produce a privilege log is mooted, given the Court's holding that none of the McMorgan/DOL documents are privileged or protected by the work product doctrine.

McMorgan's countermotion for a protective order is denied.

### D.

■ FCMC moves for sanctions against McMorgan for the attorneys' fees and costs involved in bringing this motion. The Court finds that McMorgan's position was arguable under existing law. The issue of whether privilege is waived when documents are submitted to the government at the government's request to aid in government investigations is not well settled. Cases exist on both sides of the issue. McMorgan's continued refusal to produce even a privilege log is less justifiable, but also arguable in good faith based on McMorgan's reluctance to do

 

anything that could compromise the DOL's investigation. The Court has never issued an order to compel production of these documents, so McMorgan was not intentionally disobeying a Court order. The Court finds that McMorgan's hardball tactics in refusing to allow FCMC to copy admittedly nonprivileged documents, and in insisting that FCMC's counsel review the documents at a small desk in a conference room that contained a large empty table, *are* inexcusable. The Court declines to award sanctions at this time. The Court cautions McMorgan, however, that should such inappropriate hardball tactics come to the Court's attention again, the Court will not hesitate to impose strong sanctions.

FCMC's motion for sanctions is denied.

### E.

It has come to the Court's attention that there is a dispute between McMorgan and FCMC as to which party will bear the cost of developing an index to the Document Depository. The Court understands that McMorgan has already spent significant time and money developing such an index. The Court finds that the cost of developing the index will be borne equally by McMorgan and FCMC, and that the index will be made available to *all* parties to this litigation.

### III.

Accordingly,

IT IS HEREBY ORDERED that:

1. FCMC's motion to compel is GRANTED. None of the documents exchanged between McMorgan and the DOL are covered by the attorney-client privilege or work product doctrines. All such documents that relate to the loans at issue in this litigation or McMorgan's construction loan program in general must be produced immediately to FCMC.

2. McMorgan's countermotion for a protective order is DENIED.

3. FCMC's motion for sanctions is DENIED.

4. The cost of developing an index to the Document Depository will be borne equally by McMorgan and FCMC, and the index shall be made available to all parties to this litigation.

