UNITED STATES of America, Plaintiff,

v.

**Albert BERGONZI and Jay Gilbertson, Defendants.**

No. CR–00–0505.

United States District Court, N.D. California.

Jan. 10, 2003.

564

Joseph P. Russoniello, Cooley Godward LLP, San Francisco, CA, Dorothy Yates Kirkley, Kirkley & Payne, Atlanta, GA, Cristina C. Arguedas, Cooper Arguedas & Cassman, Emeryville, CA, Robert Plotkin,

Paul Hastings Janofsky & Walker LLP, Washington, DC, for defendants.

Timothy A. Miller, James E. Lyons, Skadden, Arps, Slate, Meagher & Flom, San Francisco, CA, for intervenor defendant.

John H. Hemann, U.S. Attorney's Office, San Francisco, CA.

## ORDER GRANTING DEFENDANTS' MOTION FOR DISCOVERY

JENKINS, District Judge.

## INTRODUCTION

Before the Court are a motion to intervene filed by nonparty McKesson Corporation ("McKesson" or "Company") and motions to produce materials provided to the Government pursuant to agreements filed by both Defendants Albert Bergonzi ("Bergonzi") and Jay Gilbertson ("Gilbertson").[1] McKesson's motion to intervene requires the Court to determine whether the Company may intervene in the instant action to challenge Defendants' request for the production of documents on grounds of privilege. Defendants' motions for the production of materials provided to the Government pursuant to agreements require the Court to determine whether the Government is required to produce certain documents pursuant to Rule 16 of the Federal Criminal Rules of Evidence ("Rule 16") and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and whether the documents at issue are privileged.[2] In connection with the motions, the Court also considers the brief of the Securities and Exchange Commission ("SEC"), amicus curiae supporting the Government and a recent decision issued by the·Court of Chancery of the State of Delaware.[3] Having read and considered the papers, and having heard the parties at oral argument, the Court GRANTS McKesson's motion and GRANTS Defendants' motions.

1. The Court refers to both Defendants collectively as "Defendants."

2. Gilbertson asserts that the Government offered to product the disputed materials subject to a protective order, and both Defendants agreed. McKesson objected to any form of disclosure and the motion ensued.

## FACTUAL BACKGROUND

On September 27, 2000, a grand jury returned an indictment charging Defendants, former executives of HBO & Company ("HBOC"), with seventeen counts of securities, and mail and wire fraud. On January 20, 2001, the grand jury returned a superseding indictment alleging additional fraudulent activity. The indictment alleges between 1997 and April 1999, Defendants and others deliberately engaged in a variety of fraudulent practices that resulted in the intentional misstatement of the publicly reported financial results of HBOC and McKesson HBOC ("McKesson HBOC" or "Company"), the company which resulted from a January 1999 acquisition of HBOC by McKesson Corp. ("McKesson").

The investigations of Defendants began shortly after McKesson publicly disclosed its auditors had discovered accounting irregularities on April 28, 1999. Private actions alleging securities fraud began to be filed on the same day of the announcement.

The Company's Board of Directors authorized an Audit Committee to review the circumstances and make recommendations regarding the Company's accounting policies, procedures and controls. The Audit Committee retained the firm of Skadden, Arps, Slate, Meagher & Flom ("Skadden") to provide legal advice. Skadden, in turn, retained the accounting firm of Price Waterhouse Coopers ("PWC") to assist with the review.

On May 10, 1999, Skadden and PWC met with SEC investigators. On May 27, 1999, the Company and the SEC entered into a confidentiality agreement ("SEC Agreement"), which provided that the Company was conducting an internal investigation, which would likely culminate in the preparation of a report ("Report") which it would provide to the SEC when completed. *See* Gilbertson Motion, Exh. A (SEC Agreement)

3. After the SEC filed its amicus brief, the Court received Bergonzi's opposition. The Court did not authorize Bergonzi to file any supplemental briefing, and admonishes Bergonzi from continuing such practices in the future. Having said that, the parties did not object to the file, and, therefore, the Court considers it for the purposes of the motion.

at 2. The SEC Agreement professes the Company has a "common interest" with the SEC "in obtaining information contained in the Report and Back-up Materials[4] if it is able to do so without losing protection from further disclosure." *Id.* It further states that, for its part, the SEC "has recognized that obtaining access to the Report and Back-up Materials can assist the [SEC] in carrying out its law enforcement responsibilities." *Id.* In providing the "Report and Back-up Materials," the Company purported not to waive work product or applicable attorney-client privilege, and the SEC agreed that it would not argue that the voluntary submission of the information would constitute a waiver of any privilege. *Id.* The SEC also agreed to maintain confidentiality of the information "except to the extent that the [SEC] determines that disclosure is otherwise required by federal law." *Id.*

On May 28, 1999, Skadden, acting as counsel for the Company, and the United States Attorneys' Office ("USAO" or "Government") entered into a separate and similar confidentiality agreement ("USAO Agreement"), by which the USAO would receive a copy of the Report and Back-up Materials prepared as a result of the Company's internal investigation. *See* Gilbertson Motion, Exh. C (USAO Agreement) at 2. The USAO Agreement provided the Company was, based on information known to the USAO and prior to investigation, not the subject or target of any investigation. *See id.* It further stated, however, the USAO could use any documentation produced in any criminal proceeding, including prosecution of the Company. *See id.* at 3.

As part of the internal review, Skadden conducted fifty-five (55) interviews of thirty-seven (37) present and former employees of McKesson and HBOC, preparing an interview memoranda for each of those interviewed ("Interview Memoranda"). Based upon the information obtained and the conclusions reached, Skadden prepared the Report and presented it to the Audit Committee on July 26, 1999.

Between July 27, 1999, and August 5, 1999, Skadden provided the Report and Back-up Materials, including the Interview Memoranda, to both the SEC and the USAO. Prior to receipt of the Report and the Back-up Materials, and on July 19, 1999, the SEC issued a Formal Order of Investigation of the Company. *See* Gilbertson Motion, Exh. D ("Formal Order of Investigation").

Skadden continued to provide documents to the SEC and the USAO and, on November 19, 1999, the SEC and Skadden entered into a supplemental agreement of confidentiality ("Supplemental Agreement"). *See* Gilbertson Motion, Exh. E (Supplemental Agreement). Although the SEC has yet to charge the Company, staff from the SEC has filed a "Wells Letter," advising McKesson HBOC of its intent to seek authorization from the SEC to file charges against the Company. *See* Gilbertson Reply, Exh. 1 ("Wells Letter"). The Wells Letter was issued on June 29, 2001. *See id.*

On January 10, 2002, during McKesson's review of materials the USAO had produced to Defendants, McKesson discovered the USAO had produced four Interview Memoranda. That same day, McKesson called the Government to advise it of the inadvertent production and asked that it follow up with Defendants. By letter dated January 31, 2002, the Government sought the return of the four Interview Memoranda from Defendants. On February 7, 2002, McKesson learned that while Bergonzi returned the documents, Gilbertson refused. McKesson further learned that the USAO produced an additional Interview Memoranda to Gilbertson, and Gilbertson has again refused to return the document.

## ANALYSIS

### I. Motion to Intervene

McKesson seeks to intervene in the instant action on grounds that the documents sought by Defendants are privileged. The motion is

---

**4.** The SEC Agreement defines "Back–Up Materials" to include "company documents ... submitted in support of the Report," the Interview Memoranda, and "period oral summaries concerning the status of the review being conducted under the direction of the Audit Committee." *See* SEC Agreement at 1.

not opposed by the Government or either Defendant.

 Third parties may intervene in a criminal trial to challenge the production of subpoenaed documents on the ground of privilege. *See generally United States v. Cuthbertson*, 651 F.2d 189, 193 (3d Cir.1981). Here, McKesson is challenging the production of the Report and Back-up Materials sought by Defendants from the USAO in the instant criminal action on grounds that production of the documents is precluded by its claim of attorney-client privilege and work product protection.

Because the privilege claimed belongs to McKesson, intervention is appropriate. Moreover, the parties to the criminal action do not oppose the intervention. As such, the Court GRANTS McKesson's motion to Intervene.

## II. Motion for Production

Defendants seek production of the Report and Back-up Materials, including the Interview Memoranda. Defendants argue the Company waived any claim of privilege by producing the material to the Government. They also contend the Government's subsequent production of the documents to Defendants effects a waiver of any applicable privileges. Defendants further contend they are entitled to the documents under Rule 16 and *Brady*. This entitlement, Defendants claim, exist even if the Court finds the privilege attaches. The Court addresses each of the arguments in turn below. In resolving the motion, however, the Court reaches the issue

of privilege first, as the Company argues that its claim of privilege precludes production of documents under either Rule 16 or *Brady*.[5]

### A. Privilege

Defendants contend neither the attorney-client privilege nor the protection under the work product doctrine precludes production of the Report and Back-up Materials they now seek where (1) the Company did not have the documents prepared to assist in providing legal advice but instead for the Government in an effort to obtain lenience; (2) the Company voluntarily produced the material to both the SEC and the USAO; and (3) the USAO produced portions of the allegedly privileged documents to Gilbertson. The Company counters that the documents sought by Defendants enjoy protection from disclosure under the attorney-client privilege and the work product doctrine and that it waived neither privilege through its disclosure of the documents to the Government, or the Government's disclosure of the documents to Defendants. The Government joins the opposition on grounds that McKesson did not waive protection under the work product doctrine.[6] The SEC, with its amicus brief, joins the Government's position, relying on the doctrine of selective waiver articulated by the Eight Circuit in *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596 (8th Cir.1977) and adopted by the dissent in *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289 (6th Cir.2002).

---

5. Production of the documents sought herein, namely the Report and the Back-up Materials, is being disputed in the related civil action, *Adler v. McKesson HBOC, Inc., et al.*, No. 99–7980–3 (Georgia State Court, Gwinnett County) ("*Adler* Action"). The Georgia trial court ordered production of the material on grounds that the attorney-client privilege had been waived. On appeal, the Georgia Court of Appeals remanded the case to the trial court so that it could, notwithstanding its finding that the attorney-client privilege had been waived, determine whether McKesson waived protection under the attorney work product doctrine. As of the date of McKesson's opposition, the Georgia court has not rendered a decision on the issue. Even if it had, however, McKesson argues that any determination by the Georgia state court has no preclusive effect in these proceedings because the parties in

this proceeding are not identical to the parties in the *Adler* Action. Defendants do not challenge McKesson's proposition. Nor do they seek to bar the defense of attorney-client privilege on grounds that the issue has already been decided.

6. In making this argument as to privilege, Defendants contend that neither work product protection nor attorney client privileges apply. The Government, in its opposition, does not address Defendants' argument as to whether the attorney-client privilege applies. Gilbertson suggests that the Governments failure is a "tacit acknowledgment that the claim cannot reasonably maintained here." The Court declines to consider Gilbertson's characterization of the Government's failure to respond as an acknowledgment in rendering its decision as to whether the privilege applies.

### 1. Attorney–Client Privilege

#### a. Applicability

The parties do not dispute the Audit Committee retained Skadden to gather relevant facts and develop an effective legal strategy for responding to potential claims of securities fraud based upon the accounting irregularities it discovered in connection with the merger of HBOC. Moreover, there is no dispute both the Report and the Interview Memoranda contained the results of that query and that McKesson agreed to turn over the Report and Interview Memoranda to the Government before the documents had been prepared and pursuant to the SEC Agreement and USAO Agreement (collectively "Agreements"). The question before the Court, therefore, is whether the attorney-client privilege attaches to the documents where McKesson HBOC agrees, prior to the creation of the documents, to disclose the same to the Government on condition that the Government acknowledge and make efforts to maintain the confidential nature of the documents unless it determines, in its discretion, that it must disclose the same.

█ The party asserting the privilege must make a *prima facie* showing the privilege protects the information the party intends to withhold. *In re Grand Jury Invest.,* 974 F.2d 1068, 1071 (9th Cir.1992). The privilege applies where legal advice of any kind is sought from a professional legal adviser in his capacity as such, and the communication relates to that purpose, is made in confidence, by or for the client. *See id.*

In order for the privilege to apply, the communication sought to be protected must be, among other things, made in confidence. *See In re Grand Jury Invest.,* 974 F.2d at 1071. Here, and as argued by the Company, the Agreements are replete with language which would support a finding the Company intended the documents now sought by Defendants to be confidential. Specifically, the Company stated that the documents were created "solely for the purposes of providing legal advice to the Company and the Audit Committee ..." and would contain and reflect "communications protected by the work-product doctrine and attorney-client privilege ...." SEC Agreement at 2; USAO Agreement at 2. The Agreements also indicated the Company did not want to nor intend to waive the protection from further disclosure. *See id.; see also* USAO Agreement at 3. The Company further sought and obtained agreement by the Government for efforts to maintain the confidentiality of the documents produced. *See id.* (stating in both that the Government "will maintain the confidentiality of [the documents] ... and agrees not to disclose [the documents] to any third party ....").

█ Having said that, communications between client and attorney for the purpose of relaying communication to a third party is not confidential and not protected by the attorney-client privilege. *See United States v. Sudikoff,* 36 F.Supp.2d 1196, 1204–05 (C.D.Cal.1999) (internal citations omitted) (finding that client's communication with attorney made with intent that the attorney relay the communication to the government is not protected by the privilege). Here, the Agreements make clear that prior to preparation of the Report and Back-up Materials, the Company agreed to disclose the documents to the Government. *See* SEC Agreement at 1 (agreeing to provide the SEC with the documents on May 27, 1999); USAO Agreement at 1 (agreeing to provide the USAO with the documents on May 28, 1999); *see also* Gilbertson Motion, Exh. B (Declaration of Helane L. Morrison ("Morrison Decl.")) at ¶ 15 (stating before entering into the SEC Agreement, Skadden informed SEC that the "Audit Committee had directed Skadden ... to cooperate fully with the [SEC] provided that a suitable confidentiality agreement was in place.").

The communication between Skadden and the Company, therefore, was made with the intent to relay the communication to the Government.[7]

---

**7.** It is difficult for the Court to imagine how the communication between the Company and Skadden were confidential communications between attorney and client when Skadden prepared the Report and Back-up Material after McKesson agreed to disclose the same to the Government.

Such a disclosure conflicts with the underlying rationale behind the privilege, namely that the privilege encourages frank discussions between an attorney and his client. *See generally Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

Moreover, certain terms in the same Agreements weigh against a finding that any of the advice contained therein was made in confidence. Specifically, the Company authorized the SEC to, in its discretion, "determine that disclosure is otherwise required by federal law or in furtherance of [either entities'] discharge of its duties and responsibilities." SEC Agreement at 2. Likewise, the Company "consent[ed] to the disclosure of the [documents] to a federal grand jury as the [USAO] deems appropriate, and in any criminal prosecution that may result from the [USAO's] investigation." By giving the Government, whether the SEC or the USAO, full discretion to disclose the Report and Interview Memoranda in certain circumstances, the terms of the Agreements run counter to the Company's assertion the communication was intended to remain confidential.

As such, the Court is not persuaded that the Company intended the communications made to remain confidential, as it must have in order for the privilege to apply in the first instance, and finds that the Company failed to meet its burden of persuading the Court that the attorney-client privilege applies over the documents sought by Defendants.[8]

### 2. Work Product Doctrine

#### a. Applicability

The work product doctrine protects materials prepared by an attorney in anticipation of litigation from discovery. *See generally Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The privilege is intended to allow an attorney to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Id.* Materials that contain the impressions, conclusions or theories of counsel constitute work product. *See id.*

■ Defendants argue the work product protection never applied on grounds both the Report and Back-up Material were created with the intent to disclose. Although Defendants' argument makes logical sense, there is no requirement, when determining whether the protection applies, that the attorney and client intend to maintain the material in confidence. *See generally McMorgan*, 931 F.Supp. at 709 (finding generally the attorney-client privilege and the work product protection serve different purposes and that some disclosures do not constitute a waiver of the work product protection). The work product doctrine extends beyond confidential communications between the attorney and client to any document prepared in anticipation of litigation by or for the attorney. *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289 (6th Cir. 2002).

■ Here, Skadden prepared the Report and Back-up Materials in response to the securities fraud suits being filed against the Company and certain employees, whether former employees or not. Because the Report and Back-up Materials were prepared in anticipation of actual litigation and constitute Skadden's mental impressions and legal analyses, the Court finds that the documents sought herein fall within the protection of the work product doctrine.

#### b. Waiver

Having found protection under the work product doctrine applies, the Government argues the Company did not waive the protection with its production of the material to the Government because the Company entered into valid confidentiality agreements with the Government before production. Moreover, the Government argues it could not waive the

---

8. The Court makes this finding despite its recognition that at least some courts have found the attorney-client privilege is not waived despite voluntary disclosure of otherwise privileged documents to government agencies, such as the SEC. *See e.g. Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir.1977) (finding that Diversified's disclosure of documents in a nonpublic SEC investigation did not constitute a full waiver of the privilege because, holding otherwise, "may have the effect of thwarting the developing procedure of corporation to employ independent outside counsel to investigate and advise

them in order to protect stockholders, potential stockholders and customers."). The Court finds those cases distinguishable on grounds that privilege was already found to have applied, and the issue considered was one of waiver. In contrast, here, the privilege did not attach in the first instance because the Company created the communications with the intent to disclose the same to the Government. Moreover, even assuming that the privilege had attached to the documents sought herein, the record here clearly supports a finding of waiver for the reasons more fully articulated in Section 2(b) 1, 2 and 3 of this Order.

protection by having produced some of the interview memoranda to Gilbertson because the production was inadvertent and because the privilege was not the Government's to waive. McKesson HBOC makes the same arguments, but adds that it shared a common interest with the Government. The Court addresses each of the arguments in turn below.

### (1) Common Interest Exception

As stated above, McKesson HBOC argues, inter alia, that it did not waive its privilege with its production to the Government because the Ninth Circuit recognizes that there is no waiver of the privilege where a party discloses privileged material to another with which it shares common interests and because McKesson HBOC entered into valid confidentiality agreements with the Government before production. Moreover, it argues the Government could not waive the Company's privilege by having produced some of the Interview Memoranda to Gilbertson because the production was inadvertent. The Court finds, as more fully explained below, that McKesson has failed to establish the existence of a common interest between itself and the Government and according finds that the applicable privilege has been waived and said waiver was not inadvertent.

■ The common interest privilege, frequently referred to as the joint defense privilege, applies where (1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived. *See In re Mortgage Realty Trust,* 212 B.R. 649, 653 (Bankr.C.D.Cal.1997). The interest does not require a complete unity of interests among the participants, and may apply where the parties' interests are adverse in substantial respects. *See id.* (citing *In re Grand Jury Subpoena Duces Tecum,* 406 F.Supp. 381, 392 (S.D.N.Y.1975) (applying where a lawsuit between the codefendants was foreseeable)).

■ Here, the Company argues it shared common interests with the Government, engaging Skadden to conduct the review in order to determine, among other things, whether any individuals violated the federal securities laws in connection with merger. In support, the Company points to the Agreements which specifically state that the production of the Report and Interview Memoranda could "assist the [Government] in carrying out its law enforcement responsibilities." SEC Agreement at 2; USAO Agreement at 2. That the Government could have brought charges against it and was in fact a potential adversary of the Company does not, according to it, lessen the applicability of the common interest privilege.

Defendants argue that the Company and the Government were indeed adversaries, specifically pointing to language in the USAO Agreement which contemplated future prosecution of the Company. *See* USAO Agreement at 3. In addition, according to Gilbertson at least, the Government believed that it was adverse to the Company, as evidenced by its discussion of the materiality of the Report and Back-up Materials in the context of whether production is due under *Brady. See* Gilbertson Reply at 18:15–21 (citing Government Opposition at 1:20–22).

The parameters of the common interest exception to waiver of the attorney-client/work product/privilege was recently clarified by the First Circuit Court of Appeals in *United States v. Massachusetts Institute of Technology,* 129 F.3d 681 (1st Cir.1997) ("*MIT*") and the Court finds that MIT is instructive in resolving the issue of waiver in this context. In *MIT,* the government sought enforcement of a summons issued by the Internal Revenue Service ("IRS") during the investigation of MIT into whether it qualified for exempt status and was complying with certain obligations. *See id.* at 682–83. MIT declined to comply on grounds of attorney client and work product privileges. *See id.* at 683. The IRS attempted to obtain the same documents from the Defense Contract Audit Agency ("Audit Agency"), the auditing arm of the Department of Defense ("DOD"), which had obtained the documents sought by the IRS pursuant to contracts between MIT, as a government contractor, and the DOD. *See id.* Neither the Audit Agency nor the DOD had made an unconditional promise to keep MIT's documents secret, but its regulations and practices offered MIT some reason to think that indiscriminate disclosure was unlikely. *See id.*

The First Circuit found MIT waived its privilege over the documents with its volun-

tary disclosure of documents to the Audit Agency. *See MIT*, 129 F.3d at 685–86. The First Circuit also considered whether, among other things, the common interest exception to waiver of the privileges applied. *See MIT*, 129 F.3d at 685–88. It found that although MIT and the Audit Agency had a "common interest" in the performance of MIT's defense contracts and the proper auditing and payment of bills, that is not the kind of common interest to which the cases refer in recognizing that allied lawyers and clients who are working together in prosecuting or defending a lawsuit or in certain other legal transactions can exchange information among themselves without the loss of privilege. *See id.* As such, the court declined to extend the definition of "common interest" to the type of interest claimed and found the privilege waived. *See id.* at 686.

Like the defendant in *MIT*, the Company here voluntarily disclosed privileged material to a government agency. Although McKesson HBOC may have had a "common interest" in the investigation of the alleged securities fraud committed by its officers, the "common interest" alleged is not like the interest shared by allied lawyers and clients who are working together in prosecuting or defending a lawsuit or in certain other legal transactions. Indeed, the Company and the Government did not have a true common goal as it could not have been the Company's goal to impose liability onto itself, a consideration always maintained by the Government. *See also McMorgan & Co. v. First California Mortgage Co.*, 931 F.Supp. 703 (N.D.Cal.

1996) (determining, in the context of finding a waiver of work product protection, no common interest between McMorgan and the Department of Labor ("DOL") despite the fact that they both shared the common interest of protecting the participants and beneficiaries of pension funds because the evidence suggested that McMorgan was the target of DOL investigation).

McKesson attempts to distinguish *MIT* on grounds that the Audit Agency and MIT had not entered into a confidentiality agreement when the disclosures occurred. The analysis of *MIT*, however, did not turn on the absence of such an agreement.

Moreover, there is some indication that there was some type of agreement,[9] just not one which contained an unconditional promise to keep the documents secret. *See MIT*, 129 F.3d at 683.

Although McKesson entered into what it fashions to be confidentiality agreements with the Government entities involved, the agreement made by the Government to keep the documents was not unconditional.[10] As such, the Court finds McKesson HBOC failed to demonstrate the common interest exception to the waiver of the work product privilege applies. Accordingly, the production of the Report and Back-up Materials to the Government and the SEC constituted waiver of the privilege.

The conclusion is further supported by the First Circuit's analysis in *MIT* of whether voluntary disclosures to a government agency should constitute an exception to the waiv-

---

9. Instead, there was some indication the regulations supported MIT's contentions that the agency would not disclose the documents indiscriminately. *See MIT*, 129 F.3d at 683.

10. For the same reason, the Court rejects McKesson HBOC's argument that the Agreements protect its privilege. While it is clear that some effort was made on the Company's part to maintain the confidentiality of the Report and the Back-up Materials and that effort certainly does distinguish the instant matter from several of the cases cited by Defendants, the Agreements authorized the Government to disclose the Report and the Interview Memoranda in the matter it saw fit. Giving discretion to the Government to destroy the privilege is inconsistent with the dicta in cases like *In re Steinhardt Part.*, 9 F.3d 230 (2d Cir.1993) which contemplated that where disclosure occurs pursuant to a confidentiality agree-

ment, disclosure to the government might not constitute a waiver of the privilege. The Court makes this determination despite the ruling in *In re M & L Bus. Mach. Co.*, 161 B.R. 689 (D.Colo. 1993), cited by McKesson for the proposition that a confidentiality agreement permitting disclosure of documents "as required by federal law or the rules of criminal procedure" between the disclosing party and the Government protects waiver absent a common interest. *See M & L*, 161 B.R. at 696. The Court finds *M & L* distinguishable on grounds that the disclosure was made in compliance with the disclosing party's duty to cooperate in the reporting and prosecution of financial institutions crimes as mandated by compelled by Federal Reserve System Procedures, a procedure specifically distinguished by the court from the SEC's voluntary disclosure program. *See id.*

er of the privilege, referred to as selective waiver. *See MIT*, 129 F.3d at 685. The court noted the Eighth Circuit, in *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596 (8th Cir.1977) (en banc), found that disclosure under those circumstances did not constitute a total waiver of the privilege. *See MIT*, 129 F.3d at 685. It further found the remaining circuits which considered the question, namely the Second, Third, Fourth, Federal and D.C. Circuits, found that even those limited disclosures destroyed privilege. *See id.* (internal citations omitted). The First Circuit, weighing considerations of policy in favor of encouraging frank exchanges and against selective disclosure, determined that it would not expand the circumstances under which waiver is excepted. *See id.*

The Court agrees with the analysis by the First Circuit. Courts construe privileges narrowly because the privilege hinders the courts in the search for truth. *See generally MIT*, 129 F.3d at 684–85. It is inherently unfair to permit an entity to choose to disclose materials to one outsider while withholding them from another ·on grounds of privilege. *See id.* For all the same reasons, the Sixth Circuit has now joined those circuits which have rejected the selective waiver doctrine. *See Columbia/HCA Healthcare*, 293 F.3d at 302–04.[11] Moreover, as discussed above, the Court is not persuaded by McKesson's argument that somehow the existence of the Agreements would cause a different result, especially where, as here, the Government did not agree to maintain the confidentiality of the Report and Back-up Materials unconditionally.

### (2) Disclosure to Government

 Work product protection is waived where disclosure of the otherwise privileged documents is made to a third party, and that disclosure enables an adversary to gain access to the information. *See McMorgan*, 931 F.Supp. at 709. The question for the Court with respect to the Government is whether the Company's disclosure to the Government constituted a disclosure to an adverse party.

In *McMorgan*, the court found work product protection waived where McMorgan, the disclosing party, shared its information with the DOL in connection with its investigation of potential violations of the Employee Retirement Income Security Act ("ERISA") because there was the potential that McMorgan was the target of DOL investigation as the investment manager for pension trust funds. *See McMorgan*, 931 F.Supp. at 709–10. Likewise, here, McKesson HBOC disclosed the Report and the Back-up Materials to the Government despite the fact that the Government was investigating the Company. *See* Morrison Decl. at ¶ 14 (stating that the SEC began investigating the Company); USAO Agreement at 2–3 (stating that although the Company was not the subject or target of any investigation conducted as of the date of the letter, it did not preclude the possibility of prosecution against McKesson). Indeed, as a result of that investigation, the SEC issued a Wells Letter against the Company in June 2001. As such, the Court finds that neither the Company nor the Government has successfully met its burden of establishing that the Government was not an adversary. Its disclosure of the Report and Back-up Materials to the Government, therefore, constitutes waiver of the protection under the work product doctrine.[12] *Compare West-*

---

**11.** Pursuant to the Company's request, the Court also considered a recent decision issued by the Court of Chancery of the State of Delaware, *Saito v. McKesson HBOC, Inc.*, Civil Action No. 18553. The *Saito* Court held that McKesson did not share a common interest with the SEC or USAO but nevertheless employed a selective waiver analysis to preclude a finding of waiver based upon the existence of a confidentiality agreement. With all due respect to the *Saito Court*, this court finds that the analysis set forth in the *Westinghouse* and *In re Columbia/HCA Healthcare Billing Practices Litigation* decisions provide compelling policy and legal rationales to reject the selective waiver doctrine. As such,

this Court finds more persuasive the reasoning of the First, Third and Sixth Circuit on this issue. As stated by the majority in *In re Columbia/HCA Healthcare Billing Practices Litigation*, "In the final analysis, the ability to prepare ones case in confidence, which is the chief reason articulated in *Hickman* for the work product protections, has little to do with talking to the Government." *Id.* at 306–307.

**12.** According to Gilbertson, the Government believes that it is adverse to McKesson, as so contended in discussing materiality of the Report and Back-up Materials in the context of whether

inghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1428–30 (3d Cir.1991) (finding that voluntary disclosure of material to SEC and Department of Justice ("DOJ") by Westinghouse during their investigations of Westinghouse constituted a waiver of the work product protection) *with United States v. American Telephone & Telegraph,* 642 F.2d 1285, 1299 (D.C.Cir.1980) (finding no waiver despite voluntary disclosure of material to SEC and DOJ by MCI where MCI shared information with the SEC and DOJ in connection with investigation of potential antitrust claims against AT & T).[13]

### (3) Disclosure to Defendants

 Once a party has disclosed work product to one adversary, it waives work product protection as to all other adversaries. *See McMorgan,* 931 F.Supp. at 709. As discussed above, the Court finds that disclosure of the Report and Back-up Materials to the Government constituted a disclosure of the documents to an adversary. Therefore, any work product protection claimed against production to the Defendants is also waived.

### III. Discovery under *Brady* and/or Rule 16

Having resolved the issue of whether any applicable privilege bars production of the documents sought by defendants, the Court now turns to the issue of whether said documents are discoverable under *United States v. Brady* and/or Rule 16.

### A. *Brady* Production

Gilbertson seeks production of the documents pursuant to the rule in *Brady* on grounds that the Report and Back-up Materials are material either to guilt or to punishment. *See* Gilbertson Motion at 10. He specifically argues that because the Report and Back-up Material were prepared by agents of McKesson, it could contain bias in favor of the McKesson and against HBOC.

*See id.* at 10–11. To the extent the Government relied on the Report, Defendants should have access to it under *Brady. See id.* Gilbertson further argues that the Interview Memoranda should be produced because witness statements have been inconsistent on key issues of liability, and because the documents could provide exculpatory evidence regarding the Government's loss calculation. *See id.* at 11:24–12:26.

Bergonzi argues the Government should be compelled to produce both the Report and the related documents under *Brady* because the documents reflect Skadden's investigation into the causes of the Company's restatement of earnings and likely outline the roles various officers and employees played. *See* Bergonzi Motion at 11–12.

As such, the Report likely contains information concerning the process by which the relevant financial and accounting decisions were made and bears directly on Bergonzi's defenses of lack of criminal knowledge and intent. *See id.*

The Government retorts Defendants are not entitled to the Report. That the documents were useful to the Government in putting together its initial investigation does not translate to a finding that the documents would be material to Defendants. Indeed, according to the Government, the Report was not the basis for the criminal charges. With respect to the Interview Memoranda, the Government concedes that they contain information that must be produced under *Brady.* Specifically, the Government claims that certain memoranda reflect that some witnesses denied knowledge or involvement in the securities fraud scheme allegedly orchestrated by Defendants when interviewed by Skadden, but then recanted their denies when later interviewed by the Government. It argues, however, that the actual Interview Memoranda need not be produced, but merely that

---

production is due under *Brady. See* Gilbertson Reply at 18:15–21 (citing Government Opposition at 1:20–22). That portion of the Government's brief pertains to its characterization of Gilbertson's allegations, a statement made to point to inconsistencies in Gilbertson's arguments regarding materiality. As such, the Court does not accept Gilbertson's attempts to recast the Government's position.

**13.** This determination is further supported by the findings by at least the Sixth Circuit in *Columbia/HCA Healthcare* that protection under the work product doctrine is waived by disclosure under analogous circumstances. *See Columbia/HCA Healthcare,* 293 F.3d at 304–07.

exculpatory information contained in the memoranda be provided in a form and fashion that will be useful to the defense.[14] In support of its argument, the Government points to strong policy considerations which favor encouraging corporations to cooperate with government investigators by producing work product that results from internal corporate investigations. In addition, at oral argument and in Supplemental briefing submitted to the Court, the Government argued contends that as a result of its "open file discovery" policy in this matter, defendants have been provided with production of everything they need to conduct a thorough investigation and, a fortiori, with adequate discovery to prepare a full defense. Therefore, the Government posits, the Report in this matter is not "material" in that it contains nothing more than Skadden, Arps' interpretation of evidence that has already been produced. After consideration of the parties supplemental briefing, and review of the Report, the Court respectfully disagrees with the Government's position.

■■■ Under *Brady*, the government has a duty to disclose to a defendant, upon request, information that is favorable to an accused where the evidence is material to either guilt or punishment. *See Brady*, 373 U.S. 83, 83 S.Ct at 1196–97. *Brady* requests disclosure of exculpatory information that is either admissible or reasonably likely to lead to admissible evidence. *See United States v. Sudikoff*, 36 F.Supp.2d 1196, 1200 (C.D.Cal. 1999).

■■■ While it was initially compelling that only the Government's investigation provided the foundation for the charges brought against Defendants, the Company's claim that it was a victim and had a "common interest" with the Government points persuasively toward a finding that both the Report and the Back-up Materials would provide Defendants with exculpatory information that is either admissible or reasonably likely to lead to admissible evidence. More importantly, this Court has considered the Parties supplemental briefing on the Use of the Audit Report and the Report itself in determin-

ing the scope of the Government's obligations under *Brady* (and Rule 16). The Court respectfully disagrees with the Government's assessment that there is simply no basis upon which the Court could conclude that the Report will assist the defense in its preparation because there is complete overlap between the discovery provided to defendants and the contents of the Report. The Report is not just a regurgitation of the interviews conducted by the Company. This conclusion is further bolstered by the Government's concession as to its obligations to produce certain Interview Memoranda, and the fact that the Government has before declared the import of both the Report and Interview Memoranda as a useful roadmap. *See* Caldwell Decl. at ¶ 14; Morrison Decl. at ¶ 22. As such, the Court finds that *Brady* does compel production of the Report and that production is warranted under the conditions set forth in this Order.

### B. Rule 16

Gilbertson here claims that the Government is obligated to produce both the Report and Back-up Materials under Rule 16 because both the documents "will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." Gilbertson Motion at 9:11–14. Moreover, Gilbertson claims the documents are "useful to [Gilbertson] because the government failed to independently verify all of the information and influenced the government's decision-making in this case," and are therefore "material." *See id.* at 9:14–16.

Gilbertson further points to the declaration of Assistant United States Attorney Leslie R. Caldwell ("Caldwell"), who stated that the Report "was a useful initial roadmap that concisely summarized the basic facts leading to the Restatement ... the [Interview Memoranda] served as useful factual summaries ...." Gilbertson Motion at 9:14–9:21 (citing Declaration of Leslie R. Caldwell ("Caldwell Decl.") at ¶ 14). Likewise, the SEC District Administrator Helane L. Mor-

---

14. Gilbertson states that "he will not contest at this time the Government's proposal" that he will produce the Interview Memoranda in summary fashion. Gilbertson Reply at 9:25–10:2. He does, however, reserve the right to seek additional information once he has actually reviewed the Government's submissions. *See id.*

rison ("Morrison") stated the Report "proved invaluable in focusing the [SEC's] investigation on the primary wrongdoers and providing evidence of the wrongdoer's intentional fraudulent conduct" and allowed the SEC to tailor its investigation in a manner which allowed the Government to save both time and money. *See id.* at. 9:21–10:6 (citing Morrison Decl. at ¶ 22). Bergonzi specifically argues that the documents are "material" because they will contain information "concerning the processes by which the relevant financial and accounting decisions were made—the very decisions the Government seeks to pin on [Bergonzi] ...." Bergonzi Motion at 12:7–12.

The Government retorts Defendants are not entitled to the Interview Memoranda because they are not subject to disclosure under Rule 16 and instead are governed by the Jencks Act, 18 U.S.C. § 3500 ("Jencks Act"). The Government further argues Defendants are not entitled to the Report because it is not material to their defense in that the Report is merely an analysis and evaluation of evidence which was available to attorneys at another time. Such material, the Government argues by analogy to Rule 16(a)(2) which precludes the discovery of the government's work product, should not be available for production because Congress clearly intended that mental impressions and analyses regarding investigations are exempt from disclosure. Also, according to the Government, the Report is not material because Defendants' position that the Government did not verify allegations contained in the indictment independently is entirely speculative, irrelevant, and could not be determined even with the Report.

■ The Court is not inclined to adopt the Government's position the Interview Memoranda are covered by the Jencks Act and are, therefore, not subject to disclosure

under Rule 16. Rule 16(a)(2) states that "[Rule 16 does not] authorize the discovery or inspection of statements made by government witnesses or prospective government witness except as provided in 18 U.S.C. § 3500."

Section 3500, or the Jencks Act, which precludes discovery of witness' statements until after that witness testifies on direct,[15] applies to "statements" which are defined as, among other things, one "made by said witness and signed or otherwise adopted or approved by him ...." 18 U.S.C. § 3500(e).

There is no indication here that the Interview Memoranda are "statements" under the Jencks Act. The Government has not demonstrated the persons interviewed by Skadden are all government witnesses, prospective or actual, and the Interview Memoranda were created by the actual interviewees, or, at least, adopted and approved by them. *See* Opposition at 7 n. 3 (stating that the Interview Memoranda are not adopted or approved by the interviewees). As such, the Court continues with its analysis under Rule 16, considering the materiality of the Interview Memoranda as well as the materiality of the Report.

■ Under Rule 16(a)(1)(C), the government must permit the defendant to inspect and copy or photograph documents which are within the possession, custody or control of the government and which are material to the preparation of the defense.[16] To obtain discovery through Rule 16, the defendant must make a *prima facie* showing of materiality. *See United States v. Mandel,* 914 F.2d 1215, 1219 (9th Cir.1990). Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in pos-

---

**15.** Section 3500(a) provides that "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."

**16.** Rule 16(a)(1)(C) states, in whole the following:

Documents and Tangible Objects: Upon request of the defendant, the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

session of information helpful to the defense. *See id.* Moreover, it is incumbent on the district court to consider the government interests asserted in light of the materiality shown. *See id.*

■ The materiality requirement, however, is not a "heavy burden" rather, evidence "is material as long as there is a strong indication that ... the evidence will 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.' " *United States v. Liquid Sugars, Inc.,* 158 F.R.D. 466, 471 (E.D.Cal.1994). Requests which are designed to generally cast for impeachment material, are not directly pertinent, are not material and are instead simply speculative inquiries are without basis in fact to believe that the information acquired will be significantly helpful. *See id.* at 472. With this standard in mind, the Court considers whether Defendants have successfully demonstrated that the production they seek is material within the meaning of Rule 16.

■ Defendants claim the documents are "material" to them because they will plan an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal. Specifically, Gilbertson argues the Government failed to independently verify all of the information contained therein, and the information also influenced the Government's decision-making in this case. Bergonzi argues the documents are material because it will allow for discovery of other persons involved in or responsible for the alleged securities fraud—material favorable to his defense.

While the Court acknowledges the Government conducted hundreds of hours of its own investigation in bringing suit and that the Report and Interview Memoranda were useful only in a basic sense, it cannot ignore the fact that the documents sought, in particular the Report, includes a description of the process by which contracts were prepared and reviewed before they were booked. (See Defendant Gilbertson's Supplemental Factual

Submission at Pg. 2:22). In addition the Report details the magnitude of the accounting errors and places these errors in context for purposes of evaluation potentially culpable parties.[17] The declaration of Morrison in the *Adler* Action, supports the Court's finding of materiality in this regard wherein she stated the "information provided invaluable in focusing" the investigation and the "primary wrongdoers and providing evidence." Morrison Decl. at ¶ 22. Finally, the statement of Ms. Caldwell describing the Report as a "useful initial roadmap that concisely summarized the basic facts leading to the Restatement" is also telling of the Report's materiality. Gilbertson Motion at 9:16–20.

It is clear the Report sought by Defendants is material and a fortiori, discoverable.

Moreover, that the Report and Interview Memoranda contain the type of information Defendants' seek is further clarified by the Company's own statement in its motion that it, as the victim of the alleged crimes, "shared" the Government's interest in determining who was culpable. *See generally* McKesson Motion at 4:8–12. Indeed, if the Company and the Government had a common interest, then the Company would have prepared its memoranda with an eye toward discovering who, among its employees and officers, was culpable—evidence which would be material to Defendants in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.

Because the burden of establishing "materiality" in this context is not a heavy one, the Court finds that Defendants successfully demonstrate that they are entitled to discovery of both the Interview Memoranda and Report from the Government as the discovery will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal. Therefore, the Court GRANTS Defendants' motion and orders production of the Report and Back-up Material under Rule 16.

---

17. While the Report is not definitive in with respect to relative culpabilities of the persons or entities involved, it may shed light on the issue of

relative culpability of third parties and provide a basis for impeaching the Government's theories of culpability with respect to these defendants.

## CONCLUSION

For the foregoing reasons, the Court GRANTS McKesson's motion to intervene and GRANTS Defendants' motions for the production of the Report and Interview Memoranda under the following condition.

1) Prior to production, the parties are to submit to the Court a protective order governing the production and use of the material ordered produced by this Court. To the extent the parties are unable to agree on a form of protective order, each party is to submit their proposed order to the Court, on or before January 23, 2003, along with an explanation as to the necessity for submission of a separate agreement;

Production of the Report and Interview Material, under the terms set forth above, is stayed for twenty-five (25) days from the filing of this Order, so as to allow the Company and/or the Government to seek review of this Court's order.

**IT IS SO ORDERED.**