In re Tyco (02-352/02-1357)          MD-02-1335-B  03/19/04

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**In re Tyco International, Inc.**
**Multidistrict Litigation (MDL 1335)**          MDL DOCKET NO. 02-1335-B
_____          DERIVATIVE & ERISA ACTIONS
_____          Civil No. 02-352-B and
                                                          02-1357-B

                                               Opinion No. 2004 DNH 053

### MEMORANDUM AND ORDER

Mark Belnick seeks to compel Tyco International, Ltd. to produce documents that Tyco claims are either privileged or irrelevant.

### I.

Tyco has refused to produce an undetermined number of documents on the grounds that they are protected by the attorney-client and work product privileges. These allegedly privileged documents fall into two categories. The first category consists of documents that Tyco voluntarily produced to either the Securities and Exchange Commission ("SEC") or the New York District Attorney. Belnick argues that Tyco waived its privilege claims with respect to these documents by producing them to third

parties. The second category consists of documents that were not produced to either the SEC or the District Attorney but that arguably concern the same subject matter as the disclosed documents. Belnick argues that Tyco impliedly waived its privilege claims with respect to these documents because they concern the same subject matter as the disclosed documents. I address Belnick's challenge to each category of documents in turn.

## A.   Waiver by Production

Belnick relies on a well-established body of precedent to support his contention that Tyco waived its privilege claims by voluntarily producing documents to the SEC and the district attorney. United States v. Mass. Inst. of Tech., 129 F.3d 681, 684 (1st Cir. 1997); Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414 (3d Cir. 1991); In re Martin Marietta Corp., 856 F.2d 619 (4th Cir. 1988); In re Subpoenas Duces Tecum, 738 F.2d 1367 (D.C. Cir. 1984); Permian Corp. v. United States, 665 F.2d 1214 (D.C. Cir. 1981). That body of case law, however, is not without exceptions. See, e.g., Cavallaro v. United States, 284 F.3d 236, 249-50 (1st Cir. 2002) (disclosure serving "common interest"); Diversified Indus. v. Meredith, 572 F.2d 596,

611 (8th Cir. 1977) (disclosure to government agency). Thus, the first issue that I must resolve is whether the documents that Belnick seeks are covered by any exception to the general rule that privilege claims are waived when documents are produced to a third party.

The Eighth Circuit has adopted a "limited waiver" rule under which a party does not forfeit a privilege claim by producing documents to a government agency. See Diversified Indus., 572 F.2d at 611. While Tyco plainly would benefit if I were to adopt the Eighth Circuit's reasoning, that option is foreclosed by a more recent First Circuit decision rejecting the Eighth Circuit's limited waiver rule. See Mass. Inst. of Tech., 129 F.3d at 685.

Rather than abandon its argument in the face of First Circuit precedent, Tyco proposes two narrower variations of the rule. It first invokes case law recognizing that a party does not forfeit a privilege claim by producing privileged documents to a party with whom it shares a "common interest." See Cavallaro, 284 F.3d at 249-50. Tyco contends that it is entitled to rely on the common interest exception because it shares an interest with both the SEC and the district attorney in seeing that Belnick is held to account for misconduct that allegedly

-3-

injured both Tyco and its shareholders.

While I can envision circumstances in which the common interest exception might be available to a private party that has chosen to share privileged documents with a government agency, the documents at issue in the present case do not qualify for such treatment. As the First Circuit has recognized, the common interest exception exists to permit lawyers for parties bound by a common interest to work together to achieve a shared goal. See Mass. Inst. of Tech., 129 F.3d at 686. Most often, the exception is invoked when counsel for co-defendants agree to share privileged information while preparing a joint defense. See, e.g., In re Grand Jury Subpoena, 274 F.3d 563, 573 (1st Cir. 2001). The present case is quite different. Tyco is not engaged in a joint action with either the SEC or the district attorney. Instead, it has merely supplied documents that both agencies require for their own investigations. Further, while Tyco may share an interest with the SEC and the district attorney in seeing that Belnick is held to account for any wrongdoing, both agencies are acting pursuant to a broader mandate to protect the public that may well put them in an adversarial relationship with Tyco at some point in the future. Finally, unlike most cases in

-4-

which the common interest exception applies, the agencies to whom the documents have been produced have not agreed to maintain their privileged status. As I explain infra, at most, the SEC and the district attorney have agreed not to claim that Tyco forfeited its privilege claims by producing the documents. In light of these circumstances, this is not the kind of case that the common interest exception was intended to reach. See Mass. Inst. of Tech., 129 F.3d at 685-86; United States v. Bergonzi, 216 F.R.D. 487, 496 (N.D. Cal. 2003).

Tyco next argues that it did not forfeit its privilege claims because it produced the documents pursuant to agreements that they would remain privileged. When Tyco produced many of the documents at issue, it did so with cover letters stating that production "would not constitute a waiver of any privilege," (Opp'n Mot. to Compel Produc. Ex. 2) "does not waive any privilege," (Id. Ex. 7) and "is not a waiver of any privilege" (Id. Ex. 6). Tyco has also produced an affidavit from an assistant district attorney who states that "I agreed with counsel for Tyco that Tyco would produce the documents called for by the Grand Jury without the People thereafter claiming that production of such documents constituted a waiver of the

attorney-client privilege." (Id. Ex. 4.) Tyco contends that its letters and the assistant district attorney's affidavit evidence its agreements with the SEC and the district attorney that the documents at issue would remain privileged. It also argues that its agreements bar third parties such as Belnick from claiming that Tyco forfeited its privilege claims. I disagree on both counts.

Tyco makes too much of its alleged agreements with the SEC and the district attorney. At most, the agreements bar both agencies from later claiming that Tyco forfeited its privilege claims by producing the documents. This is far different from an agreement to treat the documents as if they were privileged, an agreement that neither agency made when they obtained the documents that Tyco agreed to produce.[1] In any event, I am

---

[1] While Tyco's non-disclosure agreement with the SEC has more conditions than its agreement with the district attorney, it still falls short by allowing the SEC to freely disclose any documents to any third party "to the extent that the [SEC] staff determines that disclosure is otherwise required by law or would be in furtherance of the SEC's discharge of its duties and responsibilities." (Decl. in Support of Tyco's Opp'n Ex. A at 2.) See, e.g., Bergonzi, 216 F.R.D. 487 (agreement between SEC and company to keep documents confidential but allowing the SEC to disclose documents as required by law or in furtherance of its duties held to be a waiver of privilege and not a confidentiality agreement). "By giving the Government, whether the SEC or the [district attorney], full discretion to disclose the [documents]

persuaded by case law from other circuits holding that agreements with government agencies to maintain the privileged status of voluntarily produced documents are not enforceable against third parties.  See, e.g., In re Columbia/HCA Healthcare Corp. Billing Practices Litig., 293 F.3d 289, 303-04 (6th Cir. 2002); Permian Corp., 665 F.2d at 1219-22; Bergonzi, 216 F.R.D. at 497 n.11; Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 480 (S.D.N.Y. 1993).  I therefore hold that Tyco waived its attorney-client and work product privilege claims with respect to any documents that it voluntarily produced to either the SEC or the New York District Attorney.

## B.   Implied Waiver

Belnick also argues that Tyco waived potential privilege claims with respect to any communication that involves the same subject matter as any privileged communication that Tyco voluntarily disclosed to either the SEC or the district attorney.

Implied waiver claims of this sort defy categorical analysis because they require a fact specific assessment of the extent to which the party claiming the privilege would achieve an unfair

---

in certain circumstances, the terms of the Agreements run counter to the [c]ompany's assertion the communication was intended to remain confidential."  Id. at 494.

result if it were permitted to selectively disclose privileged communications. See In re Keeper of the Records, 348 F.3d at 23. I cannot make this assessment now because I do not have sufficient information about the documents at issue to evaluate Belnick's argument. Accordingly, I deny Belnick's motion to compel the production of documents subject to his implied waiver claim without prejudice to his right to renew his motion after Tyco has produced a privilege log describing the documents at issue.[2]

---

[2] Belnick also argues that Tyco waived its right to assert its privilege claims with respect to any communication that either Tyco or the plaintiffs in the ERISA, Derivative and Securities Actions placed in issue by suing him. I agree with the general proposition that a client may not sue its attorney for legal misconduct and at the same time prevent the attorney from obtaining privileged communications on the same subject that the attorney needs to defend himself. See United States v. Schmidt, 105 F.3d 82, 89 (2d Cir. 1997); Bieter Co. v. Blomquist, 156 F.R.D. 173, 179 (D. Minn. 1994). I also agree that an attorney may sometimes be permitted to disclose privileged information in response to a suit initiated by a third party where that disclosure is required to defend against a claim that the attorney engaged in legal misconduct. See, e.g., Meyerhofer Empire Fire & Marine Ins. Co., 497 F.2d 1190, 1195 (2d Cir. 1974). The nature and scope of the waiver that results from the initiation of such suits, however, presents a difficult issue that I cannot resolve on the present record. Thus, I deny the motion to compel to the extent that it is based on this argument without prejudice to Belnick's right to renew the motion after Tyco has produced a privilege log that identifies the documents which may be the subject of such a claim.

## III.

Tyco also claims that Belnick's motion to compel should be denied because the documents that Belnick seeks are irrelevant. Tyco challenges the relevancy to all or part of requests 3, 5, 20, 21, 23, 26, and 27. It asserts these requests seek documents not relevant to the claims or defenses in the ERISA and Derivative Actions. For most of the requests, I disagree.

The Federal Rules of Civil Procedure were amended in 2000 to allow parties to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ P. 26(b)(1). The amended rule also establishes that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Id. Thus, I must decide if the information sought by Belnick is relevant to a party's claim or defense. If I find that it is not, I must then decide if the information sought is relevant to the subject matter of the action, and if so, whether

---

Belnick also seeks to compel Tyco to produce certain documents generated by the Boies Schiller firm in connection with its investigations of Tyco. I also deny this request without prejudice to Belnick's right to renew his motion after Tyco has produced a privilege log identifying the documents at issue.

the discovery request is supported by good cause. <u>See</u> 6 James William Moore, <u>Moore's Federal Practice</u> § 26.41[7][c] (3d ed. 2003). It is important to note in making this determination, however, that

> [t]his more narrowly defined focus . . . does not mean that a fact must be alleged in a pleading for a party to be entitled to discovery of information concerning that fact. All it means is that the fact must be germane to a claim or defense alleged in the pleading for information concerning it to be a proper subject of discovery.

<u>Id.</u> at § 26.41[6][c]; <u>see also</u> Fed. R. Civ. P. 26(b)(1) advisory committee notes 2000 amendment ("[a] variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type . . . could be properly discoverable under the revised standard"). I also temper my analysis with the understanding that discovery rules are to be construed liberally, "with a predisposition toward allowing discovery." <u>Moore's Federal Practice</u>, <u>supra</u>, at § 26.41[6][c]. With this in mind, I evaluate each challenged discovery request in turn.

Looking first to Request No. 3, Belnick seeks production of all documents concerning bonuses that Tyco paid to certain

employees in connection with their work on a 2000 SEC investigation of Tyco. Documents that are responsive to this request are directly relevant to the claim in the ERISA Action that Belnick accepted an unauthorized and undisclosed bonus from Kozlowski (ERISA Amend. Compl. ¶ 75).

Belnick's Request No. 5 seeks all Retention Agreements between Tyco and any Tyco employee from 1995 to date. Documents that are responsive to this request are also relevant to the claim in the ERISA Action that Belnick received excessive compensation under an unauthorized employee agreement (ERISA Amend. Compl. ¶ 75).

Request's No. 20 and 21 seek materials relating to a former Tyco director, Lord Michael Ashcroft. These materials are relevant to the Derivative Action claim that Tyco purchased Lord Ashcroft's Florida residence in 1997 and structured the purchase to conceal Tyco's involvement (Derivative Action Second Amend. Compl. ¶ 136).

Belnick's Request No. 23 seeks production of documents related to the retention of Boise Schiller and the scope of its authority at Tyco after January 1, 2002. These materials are relevant to the claim in the Derivative complaint that Boise

Schiller expanded the scope of its investigation to include the use of company funds, accounting, and disclosures (Derivative Action Second Amend. Compl. ¶ 262).

Finally, Requests No. 26 and 27 seek documents relating to Belnick's destruction of documents and his use of Tyco computer equipment after his termination from Tyco. Belnick admits these requests are also relevant to Tyco's allegations in <u>Tyco v. Belnick</u>, Case No. 03-CV-1342-B, that Belnick deleted files from his computer and destroyed other, unidentified documents. Nevertheless, Tyco argues that it should not be required to respond to the requests because they are not relevant to any claim or defense raised in the ERISA or Derivative Complaints, the actions in which the discovery has been sought. I reject this argument. Because these requests are clearly relevant to claims raised in <u>Tyco v. Belnick</u>, I see no reason to force Belnick to refile the same request in that case.

## IV.

For the reasons set forth in this Memorandum and Order, I grant Belnick's motion to compel in part and deny it in part without prejudice (Doc. No. 94). Tyco is ordered to produce

documents that it previously provided to the SEC and the District Attorney and any other non-privileged documents that are responsive to Belnick's document requests.  It shall also produce a privilege log of any withheld documents.  The clerk shall schedule a telephone conference with the parties to discuss the implementation of this order.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

March 19, 2004

cc:  All Counsel of Record