UNITED STATES of America,
Plaintiff,

v.

**Ok PARK, Defendant.**

**No. CR 03–00058 DDP.**

United States District Court,
D. Guam.

May 26, 2004.

**ORDER GRANTING DEFENDANT'S
MOTION TO COMPEL**

PREGERSON *, District Judge, Sitting by Designation.

This matter comes before the Court on the defendant's motion for an order compelling the government to produce notes taken by the Assistant United States Attorney (the "AUSA") during a five-hour interview conducted with government witnesses Jin Young Kim and Mi Sook Kim (the "Kims"). After reviewing the materials submitted by the parties and hearing oral argument, the Court grants the motion and adopts the following order.

## I. Background

The defendant OK Park (the "defendant") is charged in a two-count indictment with conspiracy to traffic in counterfeit merchandise and trafficking in counterfeit merchandise. The government alleges that these crimes occurred from December 18, 1996 through November 2002 at the Yumea Gift Shop, a business allegedly operated by the defendant and the Kims.[1] The defendant maintains that she was unaware that counterfeit merchandise was being sold at the Yumea Gift Shop. (Mot. at 2.) In a letter dated December 31, 2003, the AUSA informed former defense counsel that the AUSA conducted a five-hour interview with the Kims. (*Id.* at 1; Opp. at 1, Ex. 1 thereto.) The AUSA further stated that, based upon the interview with the Kims, the government believes that the defendant was "fully aware that the Kims were selling counterfeit merchandise at the Yumea Gift Shop." (Opp., Ex. 1.) However, in its opposition brief, the government concedes that information obtained from the five-hour interview "is potentially

---

\* Honorable Dean D. Pregerson, United States District Judge for the Central District of California, sitting by designation.

1. The Kims were codefendants who pled guilty. (Opp. at 1.)

exculpatory to [the] defendant, if [the defendant] intends to raise the defense that she was not actually told by the Kims [that] they were dealing in counterfeit consumer goods." (*Id.* at 2.) In a March 13, 2004 letter to the government, defense counsel requested that the government produce the notes believed to have been taken by the AUSA during the interview with the Kims. (Mot. at 2.) The government refused to do so. (*Id.*) The defendant now moves the Court for an order compelling the government to produce the notes.

## II. Discussion

■ In *Brady v. Maryland,* the Supreme Court held that "the suppression by the prosecution of *evidence* favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (emphasis added). This obligation extends to impeachment evidence, *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), and to evidence that was not requested by the defense, *id.* at 682, 105 S.Ct. 3375.

■ Here, the defendant contends that she was unaware that counterfeit merchandise was being sold at the Yumea Gift Shop, and that information obtained from the AUSA's interview with the Kims, and presumably recorded in notes taken by the AUSA, bears directly on the defense of lack of criminal knowledge. (Mot. at 2.) The government concedes that information obtained from the interview "is potentially exculpatory to [the] defendant, if [the defendant] intends to raise the defense that she was not actually told by the Kims [that] they were dealing in counterfeit consumer goods." (Opp. at 2.) The government, therefore, concedes that information obtained from the interview is material to

guilt. The government also concedes that the constitutional mandate of *Brady* supersedes Federal Rule of Criminal Procedure 16(a)(2), which exempts from discovery or inspection "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed.R.Crim.P. 16(a)(2). The government maintains, however, that "*Brady* does not ... require disclosure of documents, but rather information." (Opp. at 1.) According to the government, it has fully complied with *Brady* by "setting forth in considerable detail the statements of two government witnesses, concerning the defendant's role in the operation of the Yumea Gift Shop." (*Id.*) The government cites no legal authority for the proposition that information, and not documents, is required under *Brady.*

The government's argument was recently rejected by a district court in the Northern District of California. In *United States v. Bergonzi,* the government conceded that interview memoranda contained information that must be produced to the defendant under *Brady.* 216 F.R.D. 487, 499 (N.D.Cal.2003). The government argued, however, that "the actual Interview Memoranda need not be produced, but merely that exculpatory information contained in the memoranda be provided in a form and fashion that will be useful to the defense." *Id.* (footnote omitted). The district court "respectfully disagree[d] with the Government's position," *id.,* and ordered the government to produce the actual interview memoranda, *id.* at 502.

The government's position is also unsupported by Ninth Circuit authority. In *Paradis v. Arave,* the prosecutor took handwritten notes of interviews conducted with a doctor, who was also a government witness, concerning the cause of the vic-

tim's death. 240 F.3d 1169, 1173 (9th Cir. 2001). The doctor made statements that were exculpatory, and that the prosecutor recorded in handwritten notes. *Id.* The Ninth Circuit held that, under *Brady* the defendant "was prejudiced by the failure of the prosecution to disclose the notes ...." *Id.* The *Paradis* decision makes clear that, where a prosecutor obtains exculpatory information from an interview with a government witness and where the prosecutor takes notes during the interview, the government is obligated under *Brady* to produce such notes.

Summaries of conversations prepared by the government are not the equivalent of actual notes for several reasons. First, summaries invariably involve a process of interpretation and characterization. That is the essence of a summary. Different individuals may hear or read the same words and summarize their meaning differently. Second, context, emphasis, and subtle distinctions may not be precisely captured by summaries. For example, it may be significant that a witness repeated an answer multiple times. The general topics being discussed at the time a statement is made may also explain the statement. Third, because the government is not necessarily privy to the defense's strategy, seemingly innocuous or immaterial statements by a witness may not be included in a summary. These seemingly innocuous or immaterial statements may, because of different facts known to the defense, be important for purposes of impeachment.

In the instant action, because the government concedes that information obtained from the interview with the Kims is material to guilt, and because it is believed that the AUSA took notes during the interview, the Court finds that the government must produce such notes to the defendant. Accordingly, the Court grants the defendant's motion to compel the notes allegedly taken by the AUSA during the five-hour interview with the Kims. The government can redact portions of the notes that it believes are work product. However, the government is ordered to make nonredacted copies of the notes part of the record for review on appeal.

## III. Conclusion

For the foregoing reasons, the Court grants the defendant's motion to compel.

**IT IS SO ORDERED.**